# Exhibit A

**001378**       BK2196PG112

### QUITCLAIM DEED

We, Robert W. Clark and Robert O. Clark, of East Providence, Rhode Island, grant to Robert W. Clark and Robert O. Clark, as joint tenants, of 254 Warren Avenue, East Providence, RI with QUITCLAIM COVENANTS:

See Exhibit "A" attached hereto.

THIS TRANSFER IS WITHOUT CONSIDERATION SO THAT NO DOCUMENTARY STAMPS ARE REQUIRED AND NO WITHHOLDING IS REQUIRED UNDER R.I.G.L. §44-30-71.3.

THE UNDERSIGNED HEREBY CERTIFIES THAT THIS TRANSFER IS EXEMPT FROM THE SMOKE DETECTOR LAW AND CARBON MONOXIDE AS PROVIDED IN SECTION 23-28.35.14.

Witness our hands this ___12___ day of ___February___, 200_4_.

___Robert W. Clark___
Robert W. Clark

___Robert O. Clark___
Robert O. Clark

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence on the ___12___ day of ___February___ 2003 before me personally appeared Robert W. Clark and Robert O. Clark, to me known and known by me to be the persons executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

___Joseph Tofino___
Joseph Tofino
Notary Public
My Commission Expires:  6/23/05

BK 2196 PG 113

EXHIBIT "A"

That certain parcel of land, with all buildings and improvements thereon, situated on the northeasterly side of Warren Avenue, in the City of East Providence and State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly corner of said parcel and at the westerly corner of land now or lately of Jose Lopes Pinheiro et al, thence northwesterly, bounding southwesterly on said Warren Avenue ninety (90) feet to land now or lately of Mary Wong Tong; thence northeasterly bounding northwesterly on said last named land, one hundred (100) feet to land now or lately of Adelaide S. Hatton; thence southeasterly, bounding northeasterly on said Hatton land in part and in part on land now or lately of Anthony M. Hotta et al, ninety (90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said Pinheiro land one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D. Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity No. 1035 Richard J. Burges Vs. Tristam Burges et al by John Hove 1901", and more specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges Jr. to C. S.  Bradly by Deed of Trust Mar. 13, 1882"; which plat is recorded in the office of the City Clerk in said City of East Providence on Plat Card 72.

PROPERTY ADDRESS:

234 Warren Avenue
East Providence, RI 02914

Map 206, Block 26, Parcel 014

RCR.

# Exhibit B

S-6310

04008

BOOK 431 PAGE 138

I, DAVID E. ALLSWORTH, of the City of East Providence, County of Providence,
of State of Rhode Island,
for consideration paid, grant to RICHARD J. CAREY of 6 Scott Drive, said City
County and State,

of

with WARRANTY COVENANTS

That certain parcel of land, with all buildings and improve-
ments thereon, situated on the northeasterly side of Warren Avenue,
in the City of East Providence and State of Rhode Island, bounded
and described as follows:-

Beginning at a point in the northeasterly line of Warren Avenue,
at the southerly corner of said parcel and at the westerly corner of
land now or lately of Jose Lopes Pinheiro et al; thence northwesterly,
bounding southwesterly on said Warren Avenue ninety (90) feet to land
now or lately of Mary Wong Teng; thence northeasterly bounding north-
westerly on said last named land, one hundred (100) feet to land
now or lately of Adelaide S. Mattos; thence southeasterly, bounding
northeasterly on said Mattos land in part and in part on land now or
lately of Anthony M. Motta et al, ninety (90) feet to said Pinheiro
land; thence southwesterly bounding southeasterly on said Pinheiro
land, one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2
(two) and the adjoining northwesterly fifty (50) feet of lot numbered
3 (three) on that plat entitled, "Map of part of the Tristam Burges
Trust Est. East Providence Made by order of Edward D. Pearce, Amasa
S. Westcott, Francis Armington Commissioners in partition Suit in
Equity No. 1835 Richard J. Burges Vs. Tristam Burges et al by John
Howe 1881", and more specifically that part of the aforesaid plat
described as "Land conveyed by Tristam Burges, Jr. to C. S. Bradly
by Deed of Trust Mar. 13, 1862", which plat is recorded in the
office of the City Clerk in said City of East Providence on Plat
Card 72.

State of Rhode Island
DIVISION OF TAXATION
REALTY
TRANSFER
TAX
$40.50

husband/wife of the grantor

release to said Grantee----all-----right of curtesy/dower and all other interest in
the aforedescribed premises

Witness my hand this 12th day of December 19 Fo.

David E. Allsworth
David E. Allsworth

State of Rhode Island, Etc.
County of Providence

In East Providence on the 7th day of December, 198o
before me personally appeared David E. Allsworth

to me known and known by me to be the party                    executing the foregoing
instrument, and             he             acknowledged said instrument, by him
executed, to be             his             free act and deed.

Ivana Pullin
JOHN S. SLEPKOW

Recorded December 9 1980 at 8 M

James W. Busby Jr.
CITY CLERK

847 PAGE 046                    004851

Richard J. Carey

of......East Providence... RI
for consideration paid, grant to Alan G. Wolfe and Gail A. Wolfe as tenants by the
Entirety

of 95 Mayflower Drive, Seekonk, MA 02771......................with WARRANTY COVENANTS
(Description, and Encumbrances, if any)

That certain parcel of land, with all buildings and improvements thereon, situated
on the northeasterly side of Warren Avenue, in the City of East Providence and State
of Rhode Island, bounded and described as follows:-

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly
corner of said parcel and at the westerly corner of land now or lately of Jose Lopes
Pinheiro et al; thence northwesterly, bounding southwesterly on said Warren Avenue
ninety (90) feet to land now or lately of Mary Wong Tong; thence northeasterly
bounding northwesterly on said last named land, one hundred (100) feet to land now
or lately of Adelaide S. Mattos; thence southeasterly, bounding northeasterly on said
Mattos land in part and in part on land now or lately of Anthony M. Motta et al, ninety
(90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said
Pinheiro land, one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining
northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map
of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D.
Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity
No. 1835 Richard J. Burges Vs. Tristam Burges et al by John Howe 1881", and more
specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges
Jr. to C. S. Bradly by Deed of Trust Mar. 13, 1862", which plat is recorded in the
office of the City Clerk in said City of East Providence on Plat Card 72.

Subject to taxes assessed December 31, 1983.

_____ husband
                              wife       of the grantor

release to said grantee         all     right of curtesy
dower     and all other interest in the aforedescribed premises.
Witness.......hand.....this.....26.....day of September.....1984

State of Rhode Island, Etc.
County of Providence

In.....Providence.....on the.....26th.....day of.....September....., 19 84
before me personally appeared.....Richard J. Carey

to me known and known by me to be the part.....Y.....executing the foregoing instrument, and.....
he.....acknowledged said instrument, by.....him.....executed, to be his.....free act and deed.

MARTIN P. SICKON
NOTARY PUBLIC

Recorded Oct. 1 1984  11:00AM
James W. Burke CITY CLERK

08943

BOOK **655** PAGE **349**

We, Alan G. Wolfe and Gail A. Wolfe

of

for consideration paid, grant to     Robert O. Clark

of     254 Warren Avenue, East Providence, Rhode Island     with WARRANTY COVENANTS

(Description, and Incumbrances, if any)

That certain parcel of land, with all buildings and improvements thereon, situated on the northeasterly side of Warren Avenue, in the City of East Providence and State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly corner of said parcel and at the westerly corner of land now or lately of Jose Lopes Pinheiro et al, thence northwesterly, bounding southwesterly on said Warren Avenue ninety (90) feet to land now or lately of Mary Wong Teng; thence northeasterly bounding northwesterly on said last named land, one hundred (100) feet to land now or lately of Adelaide S. Mattos; thence southeasterly, bounding northeasterly on said Mattos land in part and in part on land now or lately of Anthony M. Motta et al, ninety (90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said Pinheiro land one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D. Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity No. 1835 Richard J. Burges Vs. Tristam Burges et al by John Howe 1881", and more specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges Jr. to C. S.  Bradly by Deed of Trust Mar. 13, 1862", which plat is recorded in the office of the City Clerk in said City of East Providence on Plat Card 72.

Subject to taxes assessed December 31, 1985.

F T B     10/07/86

State of Rhode Island

REALTY     385.00

TAX

FB.0431

_____ husband
_____ wife     of the grantor

release to said grantee    all    right of curtesy
dower      and all other interest in the aforedescribed premises.

Witness my    hand    this    18th    day of     December     19 86.

Alan G. Wolfe

Gail A. Wolfe

State of Rhode Island, Etc.
COUNTY OF    Providence
In    East Providence    the    18th    day of     December     19 86
before me personally appeared    Alan G. Wolfe and Gail A. Wolfe

to me known and known by me to be the part    ies    executing the foregoing instrument, and    they
_____ acknowledged said instrument, by    them    executed    to be their    free act and deeds.

254 Warren Avenue

East Providence, Rhode Island
(PRINT OR TYPE NAME AND ADDRESS OF GRANTEE)     Notary public
Richard H. Norman
My commission expires: 6/30/91

CITY CLERK

BK 1776 PG 094          006343

### QUITCLAIM DEED

Robert O. Clark, of East Providence, Rhode Island for consideration paid grants to Robert W. Clark, Cranston, Rhode Island.

That certain parcel of land, with all buildings and improvements thereon, situated on the northeasterly side of Warren Avenue, in the City of East Providence and State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly corner of said parcel and at the westerly corner of land now or lately of Jose Lopes Pinheiro et al; thence northwesterly, bounding southwesterly on said Warren Avenue ninety (90) feet to land now or lately of Mary Wong Yong; thence northeasterly bounding northwesterly on said last named land; one hundred (100) feet to land now or lately of Adelaide S. Mattos; thence southeasterly, bounding northeasterly on said Mattos land in part and in part on land now or lately of Anthony M. Motta et al, ninety (90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said Pinheiro land one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D. Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity No. 1835 Richard J. Burges Vs. Tristam Burges et al by John Howe 1881", and more specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges Jr. to C. S. Bradly by Deed of Trust Mar. 13, 1882"; which plat is recorded in the office of the City Clerk in said City of East Providence on Plat Card 72.

THE GRANTOR HEREIN HEREBY RESERVES UNTO HIMSELF A LIFE ESTATE IN THE AFOREDESCRIBED PREMISES.

THE PROVISIONS OF R.I.G.L. SECTION 23-28.35-1 DO NOT APPLY TO THIS TRANSACTION BECAUSE THIS TRANSFER IS NOT A SALE.

TRANSFER IS BY GIFT SO THAT NO DOCUMENTARY STAMPS ARE REQUIRED AND NO WITHHOLDING IS REQUIRED UNDER R.I.G.L. 44-30-71.3.

THE UNDERSIGNED HEREBY CERTIFIES THAT THIS TRANSFER IS EXEMPT FROM THE SMOKE DETECTOR LAW/CARBON MONOXIDE AS PROVIDED IN R.I.G.L. SECTION 23-28.35-14.

IN WITNESS WHEREOF, the undersigned executed these presents on the 21ST day of JUNE, 2002.

*Robert O Clark*
ROBERT O. CLARK

STATE OF RHODE ISLAND
COUNTY OF KENT

In WARWICK on the 21ST day of JUNE, 2002 before me personally appeared Robert O. Clark to me known and known by me to be the party executing the foregoing instrument, and he acknowledged said instrument, by him executed, to be his free act and deed.

NOTARY PUBLIC HARRY J. HOOP IS
Notary Public

Grantee's address:
Robert W. Clark
20 Vale Avenue
Cranston, RI 02910

CITY CLERK
VALERIE A. PERRY
EAST PROVIDENCE, R.I.
02 JUN 21 AM 10:38

RCR.

**001379**   BK 2196 PG 112

## QUITCLAIM DEED

We, Robert W. Clark and Robert O. Clark, of East Providence, Rhode Island, grant to Robert W. Clark and Robert O. Clark, as joint tenants, of 254 Warren Avenue, East Providence, RI with **QUITCLAIM COVENANTS**:

See Exhibit "A" attached hereto.

THIS TRANSFER IS WITHOUT CONSIDERATION SO THAT NO DOCUMENTARY STAMPS ARE REQUIRED AND NO WITHHOLDING IS REQUIRED UNDER R.I.G.L. §44-30-71.3.

THE UNDERSIGNED HEREBY CERTIFIES THAT THIS TRANSFER IS EXEMPT FROM THE SMOKE DETECTOR LAW AND CARBON MONOXIDE AS PROVIDED IN SECTION 23-28.35.14.

Witness our hands this _12_ day of _February_, 200_4_.

_____
Robert W. Clark

_____
Robert O. Clark

STATE OF RHODE ISLAND
COUNTY OF PROVIDENCE

In Providence on the _12_ day of _February_ 2003 before me personally appeared Robert W. Clark and Robert O. Clark, to me known and known by me to be the persons executing the foregoing instrument, and they acknowledged said instrument, by them executed, to be their free act and deed.

_____
Joseph Tomino
Notary Public
My Commission Expires:  6/23/05

BK2196PG113

EXHIBIT "A"

That certain parcel of land, with all buildings and improvements thereon, situated on the northeasterly side of Warren Avenue, in the City of East Providence and State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly corner of said parcel and at the westerly corner of land now or lately of Jose Lopes Pinheiro et al, thence northwesterly, bounding southwesterly on said Warren Avenue ninety (90) feet to land now or lately of Mary Wong Tang; thence northeasterly bounding northwesterly on said last named land, one hundred (100) feet to land now or lately of Adelaide S. Mattos; thence southeasterly, bounding northeasterly on said Mattos land in part and in part on land now or lately of Anthony M. Motta et al, ninety (90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said Pinheiro land one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D. Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity No. 1035 Richard J. Burges Vs. Tristam Burges et al by John Howe 1981", and more specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges Jr. to C. S.  Bradly by Deed of Trust Mar. 13, 1882"; which plat is recorded in the office of the City Clerk in said City of East Providence on Plat Card 72.

PROPERTY ADDRESS:

254 Warren Avenue
East Providence, RI 02914

Map 206, Block 26, Parcel 014

2004 FEB 18 PM 4:05
EAST PROVIDENCE, R.I.
VALERIE A. FERRY
CITY CLERK

RCR.

006748          BK 2499 PG 295

## QUIT-CLAIM DEED

I,      ROBERT O. CLARK,

of      East Providence, Rhode Island

for consideration paid, grant to      ROBERT W. CLARK

of      254 Warren Avenue, East Providence, Rhode Island  02914,

with QUIT-CLAIM COVENANTS

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

TRANSFER IS SUCH THAT NO DOCUMENTARY STAMPS ARE REQUIRED AND
NO WITHHOLDING IS REQUIRED UNDER R.I.G.L. 44-30-71.3.

WITNESS my hand this *19th* of *July*, 2005.

*Robert O. Clark*

ROBERT O. CLARK

STATE OF RHODE ISLAND, Etc.
COUNTY OF PROVIDENCE

In *East Providence*, on the *19th* day of *July*, 2005, before
me personally appeared ROBERT O. CLARK and ., to me known and known by me to be the party
executing the foregoing instrument, and he acknowledged said instrument, by him executed, to be
his free act and deed.

NOTARY PUBLIC

MAIL TO:

ROBERT W. CLARK
254 Warren Avenue, East Providence, Rhode Island  02914

ASSESSOR'S MAP:          206
ASSESSOR'S BLOCK:        26
ASSESSOR'S PARCEL:       014

W:\Martin\Clark QC Deed 082305 kas.wpd

BK 2499 PG 296

## EXHIBIT "A"

That certain parcel of land, with all buildings and improvements thereon, situated on the northeasterly side of Warren Avenue, in the City of East Providence and State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly corner of said parcel and at the westerly corner of land now or lately of Jose Lopes Pinheiro et al; thence northwesterly, bounding southwesterly on said Warren Avenue ninety (90) feet to land now or lately of Hary Wong Tong; thence northeasterly bounding northwesterly on said last named land; one hundred (100) feet to land now or lately of Adelaide S. Mattos; thence southeasterly, bounding northeasterly on said Mattos land in part and in part on land now or lately of Anthony M. Motta et al, ninety (90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said Pinheiro land one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D. Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity No. 1835 Richard J. Burges Vs. Tristam Burges et al by John Howe 1881" , and more specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges Jr. to C. S. Brady by Deed of Trust Mar. 13, 1862"; which plat is recorded in the office of the City Clerk in said City of East Providence on Plat Card 72.

Property Address:

254 Warren Avenue
East Providence, RI 02914

Map 206, Block 26, Parcel 014

W:\Martin\Clark QC Deed 062805 kas.wpd

# Exhibit C

█████████████     ████████████        Date: 02/12/04

**NOTE**



254  WARREN AVE,  E PROVIDENCE, RI 02914-4726
[Property Address]

**1.   BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S.        $175,000.00        (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
        Coastway Credit Union, A RHODE ISLAND FEDERAL CREDIT UNION
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.   INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. Interest will be calculated on the basis of a 12-month year and a 30-day month. I will pay interest at a yearly rate of        6.890%        .

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.   PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the first day of each month beginning on        April 01, 2004        .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on
        March 01        ,2034   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  Coastway Credit Union
10 Green Street, Providence, RI  02903        or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S.   $1,151.38        .

(C) Application of Payments

Payments received by the Note Holder will be applied in the following order: (i) prepayment charges due under this Note; (ii) amounts payable under paragraph 2 of the Security Instrument (defined below); (iii) interest due under this Note; (iv) principal due under this Note; and (v) late charges due under this Note.

**4.   BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due, together with accrued interest. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes.

If within        12 Months        from the date of the execution of the Security Instrument I make a full prepayment, or a partial prepayment, I will at the same time pay to the Note Holder a prepayment charge. The prepayment charge will be equal to two percent (2%) of the unpaid balance of this Note at time of prepayment. In no event will such a charge be made unless it is authorized by state or federal law.

**5.   LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6.   BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        6.000%        of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all interest that I owe on that amount, together with any other charges that I owe under this Note or the Security Instrument.

(C) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

Date:   02/12/04

**(D) Payment of Note Holder's Costs and Expenses**
   , If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.     GIVING OF NOTICES**
   Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.
   Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.     OBLIGATIONS OF PERSONS UNDER THIS NOTE**
   If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.     WAIVERS**
   I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.    SECURED NOTE**
   In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:
   **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
   To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
   If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
ROBERT O CLARK                                    -Borrower

_____(Seal)
                                                  -Borrower
SSN:

_____(Seal)
                                                  -Borrower
SSN:

_____(Seal)
                                                  -Borrower
SSN:

_____(Seal)
                                                  -Borrower
SSN:

_____(Seal)
                                                  -Borrower
SSN:

*(Sign Original Only)*

RINT0012.wp (12-21-01)

Date: 02/12/04

## ALLONGE TO NOTE
## (CORONE LENDER)

This allonge makes reference to the following Note:

Borrowers: ROBERT O CLARK

Property Address: 254  WARREN AVE,   E PROVIDENCE, RI 02914-4726
Loan Amount: $175,000.00

Note Date:  02/12/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:        OPTION ONE MORTGAGE CORPORATION,   A CALIFORNIA CORPORATION
                                          Without Recourse

By: Coastway Credit Union, A RHODE ISLAND FEDERAL CREDIT UNION

Authorized Signer's Name                  Jennifer Carrington, Credit Union Officer
                                          Signer's Title

Page 1 of 1                                                            USD3051.wp (03-14-03)

Date: 02/12/04

# ALLONGE TO NOTE
## (INVESTOR)

This allonge makes reference to the following Note:

Borrowers: ROBERT O CLARK

Property Address: 254  WARREN AVE,   E PROVIDENCE, RI 02914-4726
Loan Amount: $175,000.00

Note Date: 02/12/04

Therefore, in reference to the captioned note, the following applies:

Pay to the order of:                                      Without Recourse

Option One Mortgage Corporation
A California Corporation

By: _____
     Nancy Hutchinson

Assistant Secretary

Page 1 of 1

# Exhibit D



BK2196PG114

WHEN RECORDED MAIL TO:
Coastway Credit Union
10 Green Street
Providence, RI  02903

001379

[Space Above This Line For Recording Data]

## MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on      02/12/2004                . The mortgagor is
ROBERT O CLARK AND ROBERT W CLARK

whose address is
    254 WARREN AVE , E PROVIDENCE, RI  02914-4726
("Borrower"). This Security Instrument is given to

Coastway Credit Union, A RHODE ISLAND FEDERAL CREDIT UNION
which is organized and existing under the laws of    RHODE ISLAND                                          and whose address is

10 Green Street, Providence, RI  02903

("Lender"). Borrower owes Lender the principal sum of
  ONE HUNDRED SEVENTY FIVE THOUSAND
                                        ... AND NO/100THs   Dollars (U.S. 175000          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on      03/01/2034              . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender, with Mortgage Covenants upon the Statutory
Condition and with the Statutory Power of Sale, the following described property located in   Providence
County, Rhode Island:

   MAP 206 BLOCK 26 PARCEL 14

   SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

which has the address of 254   WARREN AVE,  E PROVIDENCE                                              [Street, City]

Rhode Island           02914-4726              ("Property Address");
                       [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property and all easements, appurtenances, and
fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument.
All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage,
grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and
will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
COVENANTS. Borrower and Lender covenant and agree as follows:
1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal
of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to
Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes

RHODE ISLAND - Single Family
Page 1 of 6                                                                                          RISIM11.wp (10-31-02)



BK 2196 PG 15   Date: 02/12/2004

and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

5. Hazard or Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

Page 2 of 6

RISIM11.wp (10-31-02)



Date: 02/12/04

6. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**
Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained
in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-
owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as
Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence
within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as
Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies
provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the
Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the
interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to
a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the
Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's
good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security
Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing
the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the
Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security
interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate
information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan
evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal
residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower
acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property
or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights
or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued
before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with
any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by
Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract
and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds
thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may
apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may
release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute
in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof.
Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate
the foregoing provisions and as Lender shall request.

7. **Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained,
in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a
proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay
for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include
paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys'
fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7 Lender does not have
to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security
Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of
disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower
requesting payment.

8. **Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security
Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage
insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage
substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of
the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent
mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly
mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will
accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be
required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided
by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain
mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with
any written agreement between Borrower and Lender or applicable law.

9. **Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give
Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any
condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall
be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5
hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make
an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender
is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured
by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or
postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of
amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not
operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to
commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of

Page 3 of 6

RISIM11.wp (10-31-02)

BK 2 1 9 6 PG 1 1 7
Date: 02/12/04

the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

BK 2195 PG 18

Date: 02/12/04

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

21. **Acceleration; Remedies.** If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the STATUTORY POWER OF SALE and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the STATUTORY POWER OF SALE, Lender shall mail a copy of a notice of sale to Borrower as provided in paragraph 14. Lender shall publish the notice of sale, and the Property shall be sold in the manner prescribed by applicable law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

23. **Waiver of Homestead.** If Borrower heretofore has acquired or hereafter acquires an estate of homestead in the Property, Borrower hereby agrees that such homestead estate is waived to the extent of this Security Instrument and the amount due under the Note and to the extent of all renewals, extensions and modifications of this Security Instrument or the Note, and that said homestead estate is subject to all of the rights of Lender under this Security Instrument and the Note and all renewals, extensions and modifications of this Security Instrument and the Note, and is subordinate to the lien evidenced by this Security Instrument, and all renewals, extensions and modifications of this Security Instrument. Furthermore, Borrower hereby waives the benefits of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

24. **Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

25. **Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

26. **Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

27. **Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender or lawful successors in interest.

28. **Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law or in equity or otherwise arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.

29. **Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to re-execute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

30. **Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

31. **Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

Page 5 of 6

RISIM11.wp (10-31-02)

BK 2 : 8 : 0 PG : 19
Date: 02/12/04

**32. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider            ☐ Condominium Rider                     ☒ 1-4 Family Rider
☐ No Prepayment Penalty Option Rider   ☐ Planned Unit Development Rider    ☐ Occupancy Rider
☐ Other(s) (specify)

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____                    _____(Seal)
                                                                              -Borrower

_____                    _____(Seal)
                                                                              -Borrower

_____(Seal)              _____(Seal)
ROBERT O CLARK          -Borrower                    ROBERT W CLARK          -Borrower

_____(Seal)              _____(Seal)
                        -Borrower                                            -Borrower


STATE OF RHODE ISLAND,                    County ss: Providence

    On this      12       day of  February  ,  2004     , in  Providence              ,
in said County, before me personally appeared
    Robert O. Clark & Robert W. Clark

                                                      each and all to me known and known to me to be
the person(s) executing the foregoing instrument and acknowledged said execution to be  their       free act
and deed.

                                        _____
                                        Notary Public

                                        Joseph Tudino, Esq.
                                        Notary Public
                                        My Commission Expires: 6/23/05

RISIM11.wp (10-31-02)

M215dm20

EXHIBIT "A"

That certain parcel of land, with all buildings and improvements thereon, situated on the northeasterly side of Warren Avenue, in the City of East Providence and State of Rhode Island, bounded and described as follows:

Beginning at a point in the northeasterly line of Warren Avenue, at the southerly corner of said parcel and at the westerly corner of land now or lately of Jose Lopes Pinheiro et al; thence northwesterly, bounding southwesterly on said Warren Avenue ninety (90) feet to land now or lately of Mary Wong Tong; thence northeasterly bounding northwesterly on said last named land, one hundred (100) feet to land now or lately of Adelaide S. Mattos; thence southeasterly, bounding northeasterly on said Mattos land in part and in part on land now or lately of Anthony M. Motta et al, ninety (90) feet to said Pinheiro land; thence southwesterly bounding southeasterly on said Pinheiro land one hundred (100) feet to the point of beginning.

Comprising the southeasterly forty (40) feet of lot numbered 2 (two) and the adjoining northwesterly fifty (50) feet of lot numbered 3 (three) on that plat entitled, "Map of part of the Tristam Burges Trust Est. East Providence Made by order of Edward D. Pearce, Amasa S. Westcott, Francis Armington Commissioners in partition Suit in Equity No. 1835 Richard J. Burges Vs. Tristam Burges et al by John Howe 1881", and more specifically that part of the aforesaid plat described as "Land conveyed by Tristam Burges Jr. to C. S.  Bradly by Deed of Trust Mar. 13, 1862", which plat is recorded in the office of the City Clerk in said City of East Providence on Plat Card 72.

PROPERTY ADDRESS:

254 Warren Avenue
East Providence, RI 02914

Map 206, Block 26, Parcel 014

M2 1 S5r5 1 2 l

Date: 02/12/04

## 1-4 FAMILY RIDER
### Assignment of Rents

THIS 1-4 FAMILY RIDER is made    February 12, 2004         , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to
    Coastway Credit Union, A RHODE ISLAND FEDERAL CREDIT UNION
(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

        254  WARREN AVE,  E PROVIDENCE, RI 02914-4726.
                              (Property Address)

**1-4 FAMILY COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.     ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**  In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: Building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B.     USE OF PROPERTY; COMPLIANCE WITH LAW.**  Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C.     SUBORDINATE LIENS.**  Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D.     RENT LOSS INSURANCE.**  Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Covenant 5.

**E.     "BORROWER'S RIGHT TO REINSTATE" DELETED.**  Covenant 18 is deleted.

**F.     BORROWER'S OCCUPANCY.**  Unless lender and Borrower otherwise agree in writing, the first paragraph in Covenant 6 concerning Borrower's occupancy of the property is deleted.  All remaining

MULTISTATE 1-4 FAMILY RIDER
Page 1 of 3                                                        '  USR1001.wp (01-10-03)

BK 2195 PG 122

Date: 02/12/04

Covenants and agreements set forth in Covenant 6 shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph F, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of its intention to receive Rents after a default by borrower under the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of its intention to receive Rents to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This Assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. "ASSIGNMENT OF RENTS" MODIFIED.** Any Covenant of the Security Instrument granting an Assignment of Rents to Lender is superseded by this Rider.

**J. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

MULTISTATE 1-4 FAMILY RIDER
Page 2 of 3                                                          USR1001.wp (01-10-03)

BK 2196 PG 23

Date: 02/12/04

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____
ROBERT O CLARK                    Borrower

_____
                                  Borrower

_____
                                  Borrower

_____
ROBERT W CLARK                    Borrower

_____
                                  Borrower

_____
                                  Borrower

**MULTISTATE 1-4 FAMILY RIDER**
Page 3 of 3

USR1001.wp (01-10-03)

BK2 ... PG124

**WHEN RECORDED MAIL TO:**

Coastway Credit Union
10 Green Street
Providence, RI 02903

[Space Above This Line For Recording data]

## WAIVER AND RELEASE OF HOMESTEAD

KNOW ALL MEN BY THESE PRESENTS, that I/we,

ROBERT O CLARK  &  ROBERT W CLARK

Mortgagor(s) in a Mortgage to

Coastway Credit Union, A RHODE ISLAND
which is organized and existing under the laws of  RHODE ISLAND    and whose address is
10 Green Street, Providence, RI  02903
which encumbers the following described property located in    Providence
County, Rhode Island:
MAP 206 BLOCK 26 PARCEL 14
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART THEREOF.

also known and numbered, 254  WARREN AVE, E PROVIDENCE, RI, 02914-4726
hereby consent to fully and absolutely waive and release all rights and claims I/we may have in and to said premises
as to a homestead exception under the Rhode Island Homestead Laws now existing or which may hereafter be passed
in relation thereto.

By the execution of this instrument I/we fully intend that any claim of homestead exemption regarding the above
described property, both now or in the future, be, and is, subordinate and inferior to the Mortgage executed for the use
of           Coastway Credit Union, A RHODE ISLAND FEDERAL CREDIT UNION
and shall be of no force and effect as against said Mortgage at any time.

Dated this  12     day of     February          , 2004

*Robert O. Clark*
ROBERT O CLARK                     -Borrower

*Robert W. Clark*
Robert W. Clark                    -Borrower

_____    -Borrower

_____    -Borrower
_____    -Borrower
_____    -Borrower

2004 FEB 18  PM 1:06
EAST PROVIDENCE R.I.
VALERIE A. FERRY
CITY CLERK
C.R.

STATE OF  Rhode Island
COUNTY OF Providence

The foregoing instrument was acknowledged before me this  12    day of  February   2004
, by    Robert O. Clark & Robert W. Clark

Notary Public

My Commission Expires:

Joseph Tudino, Esq.
Notary Public
My Commission Expires: 6/23/05

RIMS0061 (07/06/99)

# RHODE ISLAND

DOC # 00003132
Bk: 3265 Pg: 171

PREPARED BY SECURITY CONNECTIONS
WHEN RECORDED MAIL TO:
*SECURITY CONNECTIONS INC.*
*240 TECHNOLOGY DRIVE*
*IDAHO FALLS, ID 83401*

Space above for recorder's use

Assignment-Interv.-Recorded

# ASSIGNMENT OF MORTGAGE OR DEED OF TRUST

FOR VALUE RECEIVED, *Coastway Credit Union,*

located at *10 Green Street, Providence, RI 02903*
does hereby grant, assign, transfer and set over unto *SAND CANYON CORPORATION, F/K/A OPTION ONE MORTGAGE CORPORATION*

located at  *7595 IRVINE CENTER DRIVE  IRVINE, CA 92618*
                                                                            its successors
and assigns a certain Mortgage or Deed of Trust dated    *FEBRUARY 12, 2004*
executed by *ROBERT O. CLARK AND ROBERT W. CLARK*
                                                                            as Grantor(s),
and recorded in Volume *2196*          Page No. *114*      Instrument No.*001379*
of the Mortgage or Deed of Trust records in the office of the Town Clerk in the
Town of*EAST PROVIDENCE*     State of Rhode Island on the  *16th* day of  *FEBRUARY 2004*
Time of recording*PM 1:06*          .
Property Address:*254 WARREN AVE, E PROVIDENCE, RI 02914-4726*

Page 1 of 2

**Bk: 3265 Pg: 172**

TOGETHER with all rights accrued or to accrue to said MORTGAGE OR DEED OF TRUST.

DATED **JUNE 10, 2011** _____.

COASTWAY CREDIT UNION BY
SAND CANYON CORPORATION FKA
OPTION ONE MORTGAGE
CORPORATION AS ATTORNEY-IN-
FACT

Witness, **TIFFANY BITSOI**

**MELISSA HIVELY**
**VICE PRESIDENT**

Witness, **JOHN FENNELL**

STATE OF **IDAHO** _____ )
                                ) ss
COUNTY OF **BONNEVILLE** _____ )

On **JUNE 10, 2011** _____, before me, the undersigned, a Notary Public in and for said County and State, personally appeared **MELISSA HIVELY** known to me to be the person who executed the within instrument as the **VICE PRESIDENT** _____, and _____ known to me to be the person who executed the within instrument as the _____ of the Corporation that executed the within instrument and acknowledged to me that the Corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors. WITNESS my hand and official seal.

**KRYSTAL HALL** (COMMISSION EXP. 11-14-11)
NOTARY PUBLIC

KRYSTAL HALL
NOTARY PUBLIC
STATE OF IDAHO

Page 2 of 2

RECORDED
2011 Jun 22 01:42:27P
EAST PROVIDENCE, R.I.
KIM A. CASCI
CITY CLERK

# RHODE ISLAND

DOC #   00005673

PREPARED BY SECURITY CONNECTIONS
WHEN RECORDED MAIL TO:
**SECURITY CONNECTIONS INC.**
**240 TECHNOLOGY DRIVE**
**IDAHO FALLS, ID 83401**

Bk:   3387  Pg:    72

Space above for recorder's use

Assignment-Interv.-Recorded

# ASSIGNMENT OF MORTGAGE OR DEED OF TRUST

FOR VALUE RECEIVED, **Sand Canyon Corporation F/K/A Option One Mortgage Corporation,**

located at **1525 S. BELTLINE RD, COPPELL, TX 75019**
does hereby grant, assign, transfer and set over unto **Wells Fargo Bank, N.A.,**
**as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan**
**Asset-Backed Certificates, Series 2004-OPT1**

located at   **1525 S. Beltline Rd.   Coppell, TX 75019**
                                                              its successors
and assigns a certain Mortgage or Deed of Trust dated   **FEBRUARY 12, 2004**
executed by **ROBERT O. CLARK AND ROBERT W. CLARK**
                                                              as Grantor(s),
and recorded in Volume **2196**          Page No. **114**          Instrument No. **001379**
of the Mortgage or Deed of Trust records in the office of the Town Clerk in the
Town of **EAST PROVIDENCE**   State of Rhode Island on the   **18th** day of **FEBRUARY 2004**
Time of recording **PM 1:06**          .
Property Address: **254 WARREN AVE, E PROVIDENCE, RI 02914-4726**



Page 1 of 2

**Bk:** 3387 **Pg:** 73

TOGETHER with all rights accrued or to accrue to said MORTGAGE OR DEED OF TRUST.

DATED **MAY 18, 2012** _____.

SAND CANYON CORPORATION F/K/A OPTION ONE
MORTGAGE CORPORATION

Witness, TIFFANY BITSOI

MELISSA HIVELY
VICE PRESIDENT

Witness, REBECCA HIGLEY

_____

STATE OF **IDAHO**  )
                    ) ss
COUNTY OF **BONNEVILLE**  )

RECORDED
2012 Sep 17 11:25:41PM
EAST PROVIDENCE, R.I.
KIM A. CASCI
CITY CLERK

On **MAY 18, 2012** _____, before me, the undersigned, a Notary Public in and for said County and State, personally appeared **MELISSA HIVELY** known to me to be the person who executed the within instrument as the **VICE PRESIDENT** _____, and known to me to be the person who executed the within instrument as the _____ of the Corporation that executed the within instrument and acknowledged to me that the Corporation executed the within instrument pursuant to its by-laws or a resolution of its board of directors. WITNESS my hand and official seal.

**KRYSTAL HALL** **(COMMISSION EXP. 11-14-17)**
NOTARY PUBLIC

KRYSTAL HALL
NOTARY PUBLIC
STATE OF IDAHO

Page 2 of 2

# Exhibit E

003 95                    BK2223PG244

WHEN RECORDED, MAIL TO

Coastway Credit Union
10 Greene Street
Providence, RI 02903
Attention: Consumer Lending Dept.

SPACE ABOVE THIS LINE FOR RECORDER'S USE


**Coastway**
CREDIT UNION

Coastway Credit Union
10 Greene Street
Providence, RI 02903

**HomEquity**

**Open-end Mortgage to Secure Present and Future Loans under Chapter 25 of Title 34 of the Rhode Island General Laws**

THIS MORTGAGE CONTAINS A DUE-ON-SALE PROVISION AND SECURES INDEBTEDNESS UNDER A CREDIT AGREEMENT WHICH PROVIDES FOR A REVOLVING LINE OF CREDIT AND MAY CONTAIN A VARIABLE RATE OF INTEREST.

THIS MORTGAGE is given on ___March___ 18th ___ 2004 ___ by
ROBERT O. CLARK AND ROBERT W. CLARK

hereinafter referred to individually or collectively, as the context may require, as "Mortgagor") to COASTWAY CREDIT UNION, a corporation organized and existing under the laws of the State of Rhode Island, its successors and assigns, whose address is 10 Greene Street, Providence, RI 02903 ("Mortgagee"). Mortgagor does hereby mortgage, grant, convey and warrant to Mortgagee with Mortgage covenant, upon the Statutory condition and with the Statutory Power of Sale, the following described property located in the City/Town of _EAST PROVIDENCE_ , County of _PROVIDENCE_ , State of Rhode Island:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF**

which has the street address of _254 WARREN Av, EAST PROVIDENCE, RI 02914_

together with (i) all improvements, buildings or structures of any nature whatsoever, now or hereafter erected on the property, (ii) all fixtures, including all plumbing, heating, air conditioning and ventilating equipment, now or hereafter located under, on or above the property, (iii) all rights, privileges, rents, royalties, mineral, oil and gas rights and profits, tenements, hereditaments, rights-of-way, easements, appendages, appurtenances, or riparian rights now or hereafter belonging or in any way appertaining to the property, and (iv) all of Mortgagor's right, title and interest in and to any streets, rights-of-way, alleys or strips of land now or hereafter adjoining thereto, including any replacements and additions to any of the foregoing, all of the foregoing is collectively referred to in the Mortgage as the "Property."

This Mortgage is given to secure the payment of all Indebtedness, including principal, interest, Advances (as hereinafter defined), all other amounts, finance charges, payments, taxes, and premiums due and the performance of all obligations that Mortgagor now or hereafter owes Mortgagee under this Mortgage and under that certain agreement governing Mortgagor's Open-end Home Equity Credit Plan entered into between Mortgagor and Mortgagee of even date herewith ("Agreement"), including all extensions, renewals and modifications thereof of all such obligations being hereinafter referred to as the "Debt"). The Agreement has a maximum principal credit limit of $ _41,000.00_ ___. The maturity date of this Mortgage is _03/20/2009_ ___ , which is (or date by which the Debt under the Agreement and this Mortgage is due.

This Mortgage is given to secure a revolving credit loan and shall secure not only presently existing indebtedness under the Agreement but also future advances, from the date hereof, to the same extent as if such future advances were made on the date of the execution of this Mortgage, although there may be no advance made as of the time of the execution of this Mortgage and although there may be no indebtedness secured hereby outstanding at the time any advance is made. The lien of this Mortgage shall be valid as to all indebtedness secured hereby, including future advances, from the time of its filing for recording in the Recorder's Office in the city/town in which the Property is located. The total amount of indebtedness secured hereby may increase or decrease from time to time. Mortgagor may borrow, repay & reborrow from time to time, principal up to the maximum credit limit stated above. The indebtedness secured hereby without limiting disbursements which Mortgagee may make under this Mortgage, the Agreement or any other document with respect thereof at any time, including interest and late charges accruing thereon and any Advances or disbursements which Mortgagee may make pursuant to the terms of this Mortgage, the Agreement or any other document with respect hereto, including but not limited to payment for taxes, special assessments or insurance on the Property and the interest on such disbursements. This Mortgage is intended to and shall be valid and have priority over all subsequent liens and encumbrances, including statutory liens, excepting taxes and assessments levied on the Property not yet due and payable. The unpaid balance of the revolving credit loan may at certain times be zero. A zero balance does not terminate the revolving credit loan or Mortgagee's obligation to advance funds to Mortgagor. Therefore, the lien of this Mortgage will remain in full force and effect notwithstanding any zero balance.

## A. REPRESENTATIONS

Mortgagor hereby represents to Mortgagee as follows:

1. **Validity of Security Documents.** (a) The execution, delivery and performance by Mortgagor of the Agreement, this Mortgage and all other documents and instruments now or hereafter, furnished to Mortgagee in evidence or secure payment of the Debt (the "Security Documents"), and the borrowing evidenced by the Agreement, will not violate any provision of law, any order of any court or other agency of government, or any mortgage, indenture, trust agreement or other instrument to which Mortgagor is a party or by which Mortgagor or any of Mortgagor's property is bound, or be in conflict with, or will result in a material breach of or constitute (with due notice and/or lapse of time) a default under any such instrument, or upon agreement or other instrument, or result in the creation or imposition of any lien, charge or encumbrance of any nature whatsoever upon any of Mortgagor's property or assets, except as contemplated by the provisions of the Security Documents; and

   (b) The Security Documents, as and when executed and delivered by Mortgagor, constitute the legal, valid and binding obligations of Mortgagor in accordance with their respective terms subject to applicable bankruptcy and insolvency laws.

2. **Other Information.** All other information, reports, papers and data given to Mortgagee, or to Mortgagee's legal counsel, with respect to Mortgagor, the Property, or the loan evidenced by the Security Documents are accurate and correct in all material respects and complete insofar as completeness may be necessary to give Mortgagee a true and accurate knowledge of the subject matter.

3. **Title.** Mortgagor has good and marketable title in fee simple to the Property free and clear of all encumbrances except for encumbrances of record as of the date of this Mortgage. Mortgagor will warrant and defend the same to Mortgagee forever against the lawful claims and demands of all persons whomsoever. This covenant shall not terminate but shall run with the land and continue in full force and effect so long as any portion of the Debt remains unpaid. Mortgagor has good right and full power and lawful authority to mortgage and pledge the Property as provided herein and Mortgagor will maintain and preserve the lien of this Mortgage as a first lien upon the Property until the Debt has been paid in full. Mortgagor represents and warrants that the Property is free and clear of all encumbrances except those of record and that Mortgagor will forever warrant and defend the validity and priority of the lien of this Mortgage.

4. **Litigation.** There is not now pending or threatened against or affecting the Property, nor, to the knowledge of Mortgagor, is there contemplated, any action, suit or proceeding at law or in equity or by or before any administrative agency which, if adversely determined, would impair or adversely affect the value or operation of the Property.

5. **Environmental Indemnity.** Mortgagor shall indemnify and hold Mortgagee harmless against and from any and all loss, cost, damage, claim or expense (including, without limitation, any and all attorney's fees or expenses of litigation) incurred or suffered by Mortgagee on account of (i) the location on the Property of any chemicals, material, substance, or contaminant (including, without limitation, oil, petroleum products, asbestos, urea, formaldehyde, foam insulation, hazardous waste and/or toxic waste), the presence or storage of which or the exposure to which is prohibited, limited, or regulated by any federal, state, county, regional, or local governmental unit, agency or authority, or which presence, storage, or exposure may pose a hazard to health and safety or (ii) the failure by Mortgagor or any prior owner or occupant of the Property to comply with any applicable federal, state, county, regional, or local environmental laws, regulations, and court or administrative orders.

## B. ADDITIONAL COVENANTS

Until the entire Debt shall have been paid in full, Mortgagor covenants and agrees as follows:

07-0102 LASER IA F. 00736

page 1 of 4

COPYRIGHT 2001 Members Mutual Companies, Inc. All rights reserved

| MORTGAGE (continued) | BK 2223 PG 245 |

**6. Waiver of Statute of Limitations.** To the extent permitted by law, Mortgagor hereby waives statutes of limitations as a defense to any demand or obligations secured by this Security Document.

**7. Merger.** There shall be no merger of the interest or estate created by this Security Document with any other interest or estate in the Property at any time held by or for the benefit of Mortgagee in any capacity, without the written consent of Mortgagee.

**8. Payment of Indebtedness.** Mortgagor shall timely pay and discharge the Debt or any part thereof in accordance with terms and conditions of the Agreement, this Mortgage, and the Security Documents.

**9. Payment of Taxes and Assessments.** Mortgagor shall duly pay and discharge, or cause to be paid and discharged all real estate and personal property taxes and other taxes and assessments, public or private, water and sewer rates and charges; all other governmental or nongovernmental charges applicable to the Property; any interest or costs or penalties with respect to any of the foregoing, and charges for any maintenance or agreement maintained for the benefit of the Property, general and special, ordinary or extraordinary, foreseen or unforeseen, of any kind and nature whatsoever which may at any time prior to or after the execution of this Mortgage, be assessed, levied, or imposed upon the Property or the rent or income thereof therefrom, or any use or occupancy thereof. All of the foregoing are hereinafter collectively referred to as "Taxes and Assessments" and jointly severally Mortgagee with satisfactory proof of payment of any Taxes and Assessments within ten (10) days of the date any such Taxes or Assessments are due. In the event Mortgagor fails to timely pay any such Taxes or Assessments, Mortgagee may, but shall not be obligated to, make such payments and any amounts so paid by Mortgagee shall be treated as "Advances" in accordance with Paragraph 18 hereof.

**10. Hazard Insurance.** Mortgagor shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards for which Mortgagee requires insurance. If the Property is located in an area designated by the Director of the Federal Emergency Agency as a special flood hazard area, Mortgagee agrees to obtain Federal Flood Insurance to the extent such insurance is required for the term of the loan and for the full indebtedness of the loan. Insurance policies shall be maintained in the amounts and for the periods that Mortgagee requires. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Mortgagee's approval which shall not be unreasonably withheld.

All insurance policies and renewals shall be acceptable to Mortgagee and shall include a standard mortgage clause. Mortgagee shall have the right to hold the policies and renewals. If Mortgagee requires, Mortgagor shall promptly give to Mortgagee as "loss-payee" and shall promptly give to Mortgagee all receipts of paid premiums and renewal notices. In the event of loss, Mortgagor shall give prompt notice to the insurance carrier and Mortgagee. Mortgagee may make proof of loss if not made promptly by Mortgagor.

Unless Mortgagee and Mortgagor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Mortgagee's security is not lessened or impaired. If the restoration or repair is not economically feasible or Mortgagee's security would be lessened or impaired, the insurance proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with any excess paid to Mortgagor. If Mortgagor abandons the Property, or does not answer within 30 days a notice from Mortgagee that the insurance carrier has offered to settle a claim, then Mortgagee may collect the insurance proceeds. Mortgagee may use the proceeds to repair or restore the Property or to pay sums secured by this Mortgage, whether or not then due. The 30-day period will begin when the notice is given.

Unless Mortgagee and Mortgagor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in Paragraph 8 or change the amount of the payments. If under Paragraph 3rd the Property is acquired by Mortgagee, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Mortgagee to the extent of the sums secured by this Mortgage immediately prior to the acquisition.

**11. Repair.** Mortgagor shall keep the Property in good order and condition and make all necessary or appropriate repairs, replacements and renewals thereof. Mortgagor agrees not to permit or allow any waste of the Property or make or permit to be made any material alterations or additions to the Property that would have the effect of diminishing the value thereof or that will in any way increase the risk of any fire or hazard arising out of the construction or operation thereof. Mortgagor agrees not to alter or remove any structure or fixture in the Property without Mortgagee's prior written consent. Mortgagor shall prevent any act or thing which might adversely affect or impair the value or usefulness of the Property.

**12. Restoration Following Uninsured Casualty.** In the event of the happening of any casualty, of any kind or nature, ordinary or extraordinary, foreseen or unforeseen, not covered by any Insurance Policy resulting in damage to or destruction of the Property, Mortgagor shall give notice thereof to Mortgagee and Mortgagor shall promptly at Mortgagor's sole cost and expense, commence and diligently continue to restore, repair, replace, rebuild or alter the damaged or destroyed Property as nearly as possible to its value, condition and character immediately prior to such damage or destruction.

**13. Compliance with Laws.** Mortgagor shall promptly and faithfully comply with, conform to and obey or contest by appropriate proceedings in good faith all present, and use its best efforts as to future laws, ordinances, rules, regulations and requirements of every duly constituted governmental authority or agency and of every board of fire underwriters having jurisdiction, or similar body exercising functions, which may be applicable to it or to the Property or to the use and manner of use, occupancy, possession, operation, maintenance or reconstruction of the Property, whether or not such law, ordinance, rule, order, regulation or requirement shall necessitate structural changes or improvements or interfere with the use or enjoyment of the Property.

**14. Performance of Other Agreements.** Mortgagor shall duly and punctually perform all covenants and agreements expressed as binding upon it under any agreement of any nature whatsoever that involves the Property including, without limitation, all rules and regulations of a homeowners or condominium association if the Property is part of a condominium, cooperative, phased development or other homeowners association.

**15. Inspection.** Mortgagee shall permit Mortgagee, and parties designated by Mortgagee, at all reasonable times, to inspect the Property.

**16. Hold Harmless.** Mortgagor shall, at Mortgagor's sole cost and expense, save, indemnify and hold the Mortgagee, its officers, directors, employees and agents, harmless from any injury, claim, demand, suit, judgment, execution, liability, debt, damage or penalty (hereinafter collectively referred to as "Claims") affecting the Property, or the value of any of the terms of the Security Documents, arising out of, resulting from, or alleged to arise out of or result from, any action or inaction by Mortgagee, except as may be the direct result of Mortgagee's negligence. Mortgagor shall pay all expenses incurred by the Mortgagee in defending itself with regard to any and all Claims. All Claims. These expenses shall include all out-of-pocket expenses, such as attorneys' and experts' fees, and shall also include the reasonable value of any services rendered by any employee of Mortgagee.

**17. Expenses.** Mortgagor shall pay or reimburse Mortgagee for all reasonable costs and expenses paid or incurred by Mortgagee in any action, proceeding or dispute of any kind in which Mortgagee is made a party or appears as party plaintiff or defendant, involving any of the Security Documents, Mortgagee, or the Property, including, without limitation, to the foreclosure or other enforcement of this Mortgage, any condemnation involving the Property, any action to protect the security hereof, or any proceeding in probate or bankruptcy, and any such amounts paid or incurred by Mortgagee shall be treated as Advances in accordance with Paragraph 18 thereof.

**18. Advances.** In the event Mortgagor fails to perform any act required of Mortgagor by any of the Security Documents or to pay when due any amount required to be paid by any of the Security Documents, Mortgagee may, but shall not be obligated to, make such payments or perform such act. Such payment or performance by Mortgagee shall not have the effect of curing any Event of Default or of curing the Event for making any payment that hereunder or under the Agreement, and amounts so paid by Mortgagee, together with all expenses incurred in connection therewith, shall be deemed advances ("Advances") under this Mortgage and the Agreement, shall be immediately due and payable and shall be added to the Debt. Advances shall bear interest from the date expended at the rate specified in the Agreement and shall be fully secured by this Mortgage.

**19. Use Violations.** Mortgagor shall not use the Property or allow the same to be used or occupied for any unlawful purpose or in violation of any permit or certificate, or any law, ordinance, regulation or restrictive covenant, covering or affecting the use or occupancy thereof, or suffer any act to be done or any condition to exist on the Property or any article to be brought thereon, that may be dangerous, unless safeguarded as required by law, or that may, in law, constitute a nuisance, public or private.

**20. Other Liens.** Mortgagor shall not, without the prior written consent of Mortgagee, create or permit to be created or to remain, any mortgage, pledge, lien, encumbrance or charge on, security interest in, or conditional sale of or other title retention agreement on (whether prior or subordinate to the liens of the Security Documents) the Property or income therefrom other than the Security Documents ("Liens"). In the event Mortgagor fails to promptly discharge any such Liens, Mortgagee may, but shall not be obligated to, do so and any amounts paid or incurred by Mortgagee (including reasonable attorney's fees in connection therewith), shall be treated as Advances in accordance with Paragraph 18 hereof.

**21. Transfer of the Property.** Mortgagor shall not sell, convey, transfer or assign the Property or any beneficial interest therein or any part thereof, whether by operation of law or otherwise, without the prior written consent of Mortgagee. In the event of such a sale, conveyance, transfer or assignment, Mortgagee may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Mortgagee if exercise is prohibited by applicable law as of the date of this Mortgage.

If Mortgagee exercises Mortgagee's option to require immediate payment in full, Mortgagee shall give Mortgagor notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Mortgagor must pay all sums secured by this Mortgage. If Mortgagor fails to pay these sums prior to the expiration of this period, Mortgagee may invoke any remedies permitted by this Mortgage without further notice or demand on Mortgagor.

Even if Mortgagor transfers the Property, Mortgagor will continue to be obligated under the Plan and this Mortgage unless Mortgagee releases Mortgagor in writing. As a condition to Mortgagor's consent to any proposed transfer or as a condition to the release of Mortgagor, Mortgagee may require that the person to whom the Property is transferred sign an assumption agreement satisfactory to Mortgagee and Mortgagee may impose an assumption fee. The assumption agreement will not entitle the person signing it to receive advances under the Plan.

**22. Events of Default.** The term Event of Default, as used in the Security Documents, shall mean the occurrence or happening, from time to time, of any one or more of the following: (a) Mortgagor fails to make any payment required by this Mortgage or the Agreement when it is due; (b) Mortgagor has engaged in or engages in fraud or material misrepresentation, either by act or omission, in connection with this Mortgage or the Agreement at any time during the application process or during the term of this Mortgage or the Agreement; or (c) Mortgagor acts or fails to act in a way that adversely affects the security under this Mortgage, including, without limitation, the following: (i) Mortgagor transfers title to the Property without the consent of Mortgagee; (ii) Mortgagor fails to maintain the insurance required to be carried by Mortgagor according to the terms of this Mortgage; (iii) Mortgagor fails to pay any Taxes on the Property; (iv) Mortgagor permits the filing of a lien against the Property senior to that held by Mortgagee; (v) the death of Mortgagor (in the event of more than one Mortgagor, the death of the last remaining Mortgagor who executed the Agreement); (vi) the Property is taken by condemnation or power of eminent domain; or (vii) the holder of any prior mortgage commences foreclosure of the prior mortgage.

**23. Borrower's Rights to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Mortgage discontinued at any time prior to the earlier of (i) sale of the Property pursuant to any power of sale contained in this Mortgage or (ii) entry of a judgment enforcing this Mortgage or such other time as applicable law might specify. Those conditions are that Borrower: (a) pays Lender all sums which would then be due under this Mortgage and the Plan had no acceleration occurred; (b) cures all other events of default of Mortgagor under this Mortgage and the Plan; (c) pays all reasonable expenses incurred in enforcing this Mortgage, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unchanged. Upon reinstatement by Borrower, this Mortgage and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 21.

BK2223PG246     **MORTGAGE (continued)**

**24. Remedies.** If an Event of Default shall occur and be continuing, Mortgagee may at its option, after providing Mortgagor with at least a 30-day advance notice of an opportunity period to cure the Event of Default, exercise any, some or all of the following remedies:

(a) Acceleration. Mortgagee may declare the unpaid portion of the Debt to be immediately due and payable, without further notice or demand (each of which hereby is expressly waived by Mortgagor), whereupon the Debt shall become immediately due and payable, anything in the Agreement or in the Security Documents to the contrary notwithstanding; provided further that the unpaid portion of the Debt shall be immediately and automatically due and payable without notice of any kind on the part of Mortgagor.

(b) Enforcement of Mortgage. Mortgagee, with or without entry, personally or by its agents or attorneys, insofar as applicable, may:

(i) invoke the Statutory Power of Sale whereupon this Mortgage under Rhode Island law, if Mortgagee invokes the Statutory Power of Sale, Mortgagee shall mail a copy of a notice of sale to Mortgagor and shall publish such notice of sale, and thereupon shall publish the notice of sale, and thereafter may in the manner prescribed by applicable law. Mortgagor or Mortgagor's designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Mortgage; and (c) any excess to the person or persons legally entitled to it;

(ii) take steps to protect and enforce its rights whether by action, suit or proceeding in equity or at law for the specific performance of any covenant, condition or agreement in the Agreement or in this Mortgage, or in aid of the execution of any power herein granted, or for any foreclosure hereunder, or for the enforcement of any other appropriate legal or equitable remedy or otherwise as Mortgagee shall elect;

(iii) Mortgagee may, to the extent permitted by law, collect any rents, profits, or other amounts due Mortgagor from any lease, land contract, or other agreement to which Mortgagor is leasing or selling any interest in the Property, and exercise Mortgagor's rights and remedies under such agreements. Mortgagee will have no obligation to make any demand or inquiry as to the nature or sufficiency of any payment Mortgagee receives or to present or file any claim or take any other action to collect or enforce the payment of any amount Mortgagor is entitled to under this Mortgage;

(iv) Mortgagee may rely on Mortgagor's behalf all or any part of the debt and obligations then secured by any prior mortgage, whether or not they are then due and payable and whether or not Mortgagee is then in default under the prior mortgage. However, Mortgagee will not be required to do so. Any payment Mortgagee makes shall become part of the Debt, and shall be payable on Mortgagor's demand, together with interest at the same rate as the Debt bears from time to time;

(v) Mortgagee may obtain or update coverage for fire insurance, tax liens/taxes, title searches and title insurance concerning the Property. Any amounts that Mortgagee spends to doing so will become part of the Debt;

(vi) Mortgagee may exercise any of Mortgagor's rights and options under any lease, land contract, or other agreement by which Mortgagor is leasing or purchasing any interest in the Property, including any option to purchase the Property or to renew or extend the term of the lease, land contract, or other agreement, or to repay to whole or in part the lease, land contract or other agreement. Mortgagor will have no obligations to exercise any such right or option; or

(c) Receiver or Mortgagee-In-Possession. At any time after the commencement of an action to foreclose this Mortgage, the court in which such action was commenced may, upon request of Mortgagee, appoint a receiver of the Property, or Mortgagee may, without notice or the appointment of bond (any and all such notice and bond having hereby expressly waived) and without regard to the solvency or insolvency of Mortgagor at the time of application for such receiver and without regard to the then value of the Property and Mortgagor may be appointed as such receiver or as mortgagee-in-possession. Such receiver or the mortgagee-in-possession shall have power to collect the receipts, rents, issues and profits of the Property during the pendency of such foreclosure action and, in case of a sale and a deficiency, during the full statutory period of redemption (if any), whether there be redemption or not, as well as during any further times (if any) when Mortgagor, except for the intervention of such receiver or mortgagee-in-possession, would be entitled to collect such receipts, rents, issues and profits, and all other powers which may be necessary or are usual in such cases for the protection, possession, control, management and operation of the Property during the whole of said period. Such receiver or mortgagee-in-possession shall have all of the rights and powers permitted under the laws of the State of Rhode Island. The court from time to time may authorize the receiver or mortgagee-in-possession to apply the net income in its hands in payment in whole or in part of: (a) the Debt or any order or judgment foreclosing the lien of this Mortgage, or any tax, special assessment or other lien which may be or become superior to the lien and security interest hereof or of the lien of such order or judgment, provided such application is made prior to foreclosure sale; and (b) the deficiency in case of a foreclosure sale and deficiency. The reasonable expense, including receiver's fee, counsel's fees, costs and agent's commission incurred pursuant to the powers herein contained shall be secured hereby.

(d) Remedies Cumulative and Concurrent. The rights and remedies of Mortgagee as provided in the Security Documents shall be cumulative and concurrent and may be pursued separately, successively or together against Mortgagor or the Property, or any one of them, at the sole discretion of Mortgagee, and may be exercised as often as occasion therefor shall arise, all to the maximum extent permitted by applicable laws, rules and regulations. If Mortgagee elects to proceed under one right or remedy under this Mortgage or the Agreement, Mortgagee may at any time cease proceeding under such right or remedy and proceed under any other right or remedy under this Mortgage or the Agreement. The failure to exercise any such right or remedy shall in no event be construed as a waiver or release thereof. Nothing in the Agreement or this Mortgage shall affect Mortgagor's obligation to pay the Debt and perform its obligations in accordance with the terms thereof.

(e) No Conditions Precedent to Exercise of Remedies. Neither Mortgagor nor any other person now or hereafter obligated for payment of all or any part of the Debt shall be relieved of such obligation by reason of the failure of Mortgagee to comply with any request of Mortgagor or any other person so obligated to take action to foreclose this Mortgage or otherwise enforce any provisions of this Mortgage or the Agreement, or by reason of the release, regardless of consideration, of all or any part of the security held for the Debt, or by reason of any agreement or stipulation between any subsequent owner of the Property and Mortgagee extending the time of payment or modifying the terms of this Mortgage or the Agreement without first having obtained the consent of Mortgagee or such other person; and in the latter event Mortgagor and all such other persons shall continue to be liable to make payment according to the terms of any such extension or modification agreement, unless expressly released and discharged in writing by Mortgagee.

(f) Discontinuance of Proceeding. In case Mortgagee shall have proceeded to enforce any right under any of the Security Documents and such proceedings shall have been discontinued or abandoned for any reason, then in every such case, Mortgagor and Mortgagee shall be restored to their former positions and the rights, remedies and powers of Mortgagee shall continue as if no such proceedings had been taken.

**25. Condemnation.** In the event of the taking by eminent domain proceedings of the like of any part or all of the Property by any federal, state, municipal or other governmental authority or agency thereof, all awards or other compensation for such taking shall be paid to Mortgagee for application on the Debt, provided that no such application shall result in additional interest or have the effect of curing any Event of Default or extending the term for making any payment due hereunder or under the Agreement.

**26. Prior Mortgage.** If this Mortgage is subject to a prior mortgage, the lien of which is superior to the lien of this Mortgage, Mortgagor agrees to pay each installment of the debt secured by the prior mortgage when it is due, whether by acceleration or otherwise. Mortgagor also agrees to pay and perform all other obligations of the mortgagor under the prior mortgage. Mortgagor agrees to provide Mortgagee with proof of payment or performance under the prior mortgage whenever Mortgagee requests it. If Mortgagor fails to pay any installment of principal or interest when it is due or if Mortgagor fails to pay or perform any other obligation under the prior mortgage, Mortgagee has the right, but not the obligation, to pay the installment or to pay or perform such other obligation on Mortgagor's behalf. Any amounts Mortgagee spends in performing Mortgagor's obligations will become part of the Debt, payable by Mortgagor on Mortgagee's demand, and will bear interest at the same rate as the Debt bears from time to time. Mortgagee may rely upon any written notice of default under the prior mortgage that Mortgagee receives from the holder of the prior mortgage even though Mortgagor questions or denies the existence, extent, or nature of the default. Mortgagor shall not renew, extend or modify the prior mortgage, and shall not increase the debt secured by the prior mortgage, without Mortgagee's prior written consent.

**27. Survival of Warranties and Covenants.** The warranties, representations, covenants and agreements set forth in the Security Documents shall survive the making of the loan and the execution and delivery of the Agreement, and shall continue in full force and effect until the Debt shall have been paid in full.

**28. Further Assurances.** Mortgagor shall, upon the reasonable request of Mortgagee, execute, acknowledge and deliver such further instruments (including, without limitation, a declaration of no set-off) and do such further acts as may be necessary, desirable or proper to carry out more effectively the purpose of the Security Documents and to subject to the liens thereof any property intended by the terms thereof, to be covered thereby and any renewals, additions, substitutions, replacements or betterments thereto.

**29. Recording and Filing.** Mortgagor shall, at Mortgagor's sole cost and expense, cause those Security Documents and all supplements thereto, for which constructive notice must be given to protect Mortgagee, at all times to be recorded and filed, and re-recorded and re-filed, in such manner and in such places as Mortgagee shall reasonably request, and shall pay all such recording, filing, re-recording, re-filing taxes, fees and other charges to the maximum extent permitted by the laws of the State of Rhode Island.

**30. Loan Expenses.** Mortgagor shall pay all applicable costs, expenses and fees set forth in the Agreement.

**31. No Representation by Mortgagee.** By accepting or approving anything required to be observed, performed or fulfilled, or to be given to Mortgagee, pursuant to this Mortgage, including (but not limited to any officer's certificate, balance sheet, statement of profit and loss or other financial statement, survey or appraisal), Mortgagee shall not be deemed to have assumed or represented the sufficiency, legality, effectiveness or legal effect of the same, or of any item, provision or condition thereof, and such acceptance or approval thereof shall not be or constitute any warranty or representation with respect thereto by Mortgagee.

**32. Incorporation of Agreement.** Each and every term, covenant and provision contained in the Agreement is, by this reference, incorporated into this Mortgage as if fully set forth herein.

**33. Homestead Estate.** If Mortgagor hereinafter has acquired or hereafter acquires an estate of homestead in the Property, Mortgagor hereby agrees that such homestead estate is waived to the extent of this Mortgage and the amount due under the Agreement and to the extent of all renewals, extensions and modifications of this Mortgage or the Agreement, and that said homestead estate is subject to and is hereby subordinated to all of Mortgagor's rights under this Mortgage and to the payment of all renewals, extensions and modifications hereof of this Mortgage. Furthermore, Mortgagor hereby waives the benefit of any homestead or similar laws or regulations that may otherwise be applicable from time to time.

**34. Notice.** Notice or notices to Mortgagor pursuant to Rhode Island General Law(s) 34-25-10(a) and 34-25-11 shall be sent to Mortgagor's address set forth on page 1 of this document. Except for any notice required under applicable law to be given in another manner, any notice provided for in this Mortgage shall be in writing and shall be directed properly delivered three days after deposit thereof in any means of Insuled's class mail, certified or first class United States Mail, postage prepaid in such address as may be designated by Mortgagee and Mortgagor in connection with this Mortgage.

**35. Covenants Running With the Land.** All covenants contained in this Mortgage shall run with the Land.

**36. Successors and Assigns.** All of the terms of this Mortgage shall apply to and be binding upon, and insure to the benefit of, the successors and assigns of Mortgagor and Mortgagee, respectively, and all persons claiming under or through them provided that nothing in this Paragraph shall be construed to permit a transfer, conveyance or assignment by Mortgagor other than as expressly permitted by this Mortgage.

**37. Multiple Mortgagors.** Mortgagor's covenants and agreements hereunder shall be joint, several and primary. Any Mortgagor who co-signs this Mortgage but does not execute the Agreement: (a) is co-signing this Mortgage only to mortgage, grant and convey the Property; (b) is not personally obligated to pay the Debt secured by this Mortgage; and (c) agrees that Mortgagee and any other Mortgagor may agree to extend, modify, forebear or make any accommodations with regard to the terms of this Mortgage or the Agreement without that Mortgagor's consent.

95-9100 LASER-16 F. 96754     page 3 of 4     COPYRIGHT 2001 Minnesota Mutual Company, Inc. All rights reserved.

**MORTGAGE (continued)**   BK 2 2 2 3 PG 2 4 7

38. **Severability.** In case any one or more of the obligations or the provisions of this Mortgage or of the Agreement shall be determined to be invalid, illegal or unenforceable in any respect, the validity of the remaining obligations or provisions of this Mortgage shall be in no way affected, prejudiced or disturbed thereby.

39. **Modification.** This Mortgage may not be changed, waived, discharged or terminated orally, but only by an instrument or instruments in writing, signed by the party against which enforcement of the change, waiver, discharge or termination is asserted.

40. **Applicable Law.** This Mortgage shall be governed by and construed according to the laws of the State of Rhode Island.

41. **Strict Performance.** Any failure by Mortgagee to insist upon strict performance by Mortgagor of any of the terms and provisions of this Mortgage or any of the Security Documents shall not be deemed to be a waiver of any of the terms or provisions of this Mortgage or any of the Security Documents, and Mortgagee shall have the right thereafter to insist upon strict performance by Mortgagor of any and all of them.

42. **Headings.** The headings and the section and paragraph entitlements hereof are inserted for convenience of reference only, and shall in no way alter or modify the text of such paragraphs, sections and subsections.

43. **Riders.** If one or more riders are attached to and made a part of this Mortgage, the covenants and agreements for each such rider shall be incorporated into and shall amend and supplement the covenants and agreement of this Mortgage.

44. **No Outstanding Automatic Orders in Domestic Relations Cases.** Mortgagor hereby represents and warrants to Mortgagee that either (a) there is no outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against any Mortgagor relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation or (b) there is an outstanding automatic order under Chapter 15-5 of the Rhode Island General Laws against a Mortgagor relating to a complaint for dissolution of marriage, legal separation, annulment, custody or visitation, and the other party that is subject to such order has consented to, or the court which issued the automatic order has issued another order authorizing, such Mortgagor's execution of the Agreement and this Mortgage.

45. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Mortgagee under the Agreement and under Paragraph 18 hereof shall be applied by Mortgagee first to payment of amounts payable to Mortgagee under Paragraph 18 hereof, second (in the order Mortgagee chooses) to any finance charge, other charges and collection costs owing, and third, to the principal balance under the Agreement.

46. **Loan Fees.** Mortgagor has paid the following brokerage fees, loan fees, points, finder's fees, origination fees or similar charges in connection with the loan secured by this Mortgage:

| | |
|---|---|
| Origination-Discount Fees (points) | $ |
| Application Fees | $ |
| Closing Preparation Fees | $ |
| | $ |
| | $ |
| | $ |

As provided in Rhode Island General Laws 34-23-6, none of these fees will be refunded in the event the loan is prepaid in whole or in part.

47. **Request for Notice of Default and Foreclosure Under Superior Mortgages.** Mortgagor and Mortgagee request the holder of any mortgage or other encumbrance with a lien which has priority over this Mortgage to give notice to Mortgagee at Mortgagee's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

BY SIGNING BELOW, Mortgagor accepts and agrees to the terms and covenants contained in this Security Document and in any rider(s) executed by Mortgagor and recorded with it.

IN WITNESS WHEREOF, the Mortgagor has executed this instrument the day and year first above written.

X _Robert O Clark_   X _Robert W Clark_

**ROBERT O CLARK**   **ROBERT W CLARK**

_Kay Alteen_
Witness

---

**STATE OF RHODE ISLAND**
**COUNTY OF PROVIDENCE**   **SS:**

In **CRANSTON** , in said County, on the **18th** day of **March** , **2004** before me personally appeared the above-named **ROBERT O CLARK AND   ROBERT W CLARK** , to me known and known by me to be the person(s) executing the foregoing instrument, and he/she acknowledged said instrument by him/her as executed to be his/her free act and deed.

[Affix raised notarial seal]

_Ann G Capaldi_
Notary Public
Name: _Ann A. Capaldi_
My Commission Expires: _9-5-09_

COPYRIGHT 2001 Minnesota Mutual Companies, Inc. All rights reserved.

BK 2223 PG 248

# Schedule A

TITLE HELD IN THE NAME (S) OF: ___Robert O Clark and

▮▮▮▮▮▮▮▮▮▮          Robert W Clark

THAT CERTAIN PIECE OR PARCEL OF LAND, AND THE BUILDINGS AND
IMPROVEMENTS THEREON, KNOW AS:

    254 Warren Avenue

LOCATED IN THE TOWN / CITY OF: __East Providence_____

AND STATE OF: _____Rhode Island_____

AND BEING MORE PARTICULARY DESCRIBED IN A DEED

RECORDED IN BOOK _2196_, PAGE __112__

OF THE _E. Prov_____ LAND RECORDS

SUBJECT TO COVENANTS, EASEMENTS, AGREEMENTS AND RESTRICTIONS
AS OF TITLE MAY APPEAR.

BK222316249

# 1-4 FAMILY RIDER
(Assignment of Rents)

This 1-4 FAMILY RIDER is made this **18th** day of **March**, **2004** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to Coastway Credit Union, 10 Greene Street, Providence, Rhode Island, 02903 (the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

**254 WARREN Av, EAST PROVIDENCE, RI 02914**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings, now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Paragraph 9.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Paragraph 23 is deleted.

**F. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**G. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to Section 22 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the

BK 2223 PG 250

Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorney's fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and than to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Paragraph 12.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not performed, and will not perform, any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**H. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_(signature)_ _____ (Seal)
ROBERT O CLARK                          -Borrower

_(signature)_ _____ (Seal)
ROBERT W CLARK                          -Borrower

# Exhibit F

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | █████████████

May 8, 2020
                                                            ██████████████████

3-814-BFD61-0000014-001-01-000-000-000-000



ROBERT O CLARK
ROBERT W CLARK
254 WARREN AVE
E PROVIDENCE RI 02914-4726

**Property Address:**
254 WARREN AVE
E PROVIDENCE RI 02914

**If you are experiencing a hardship as a result of COVID-19, please contact us immediately at 1-800-936-8705 or covid19assistance@mortgagefamily.com or via https://www.mortgagequestions.com/coronavirus so we can review your available options.**

---

www.MortgageQuestions.com                                                    XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT


❋ **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ████████████

❋ **FORM 34-27-3.1**

---

**NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND**
**NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES**

---

This Notice is provided to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of The Rhode Island Mortgage Foreclosure and Sale Act.

### NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

████████████

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If you fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

### NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost.** Counseling services that can help you understand your options and provide resources and referrals that may assist you in preventing foreclosure are available from mortgage counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1800-877-8339. Foreclosure prevention counseling services are available free of charge through HUD's Housing Counseling Program.

**HUD Approved Housing Counseling Agencies in Rhode Island may be found at this link http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=sea rch&searchstate=RI.  If you do not have internet access, call the toll- free number above and request a printed list.**

Mortgagee: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Mortgagee Address: 9062 Old Annapolis Road MAC: N2702-011, Columbia, MD 21045

Mortgagee Authorized Representative: GURUPRASAD B C

Date Mailed: 05/08/2020

████████████████████████

████████████████████

████████████████

---

www.MortgageQuestions.com                                                                XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 2
INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ███████████

**FORM 34-27-3.1**

---

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECAR10 A EJECUTAR LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA

---

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island § 34-27-3.1 de The Rhode Island Mortgage Foreclosure and Sale Act (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA

███████████

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca esta morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

### NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN IPOTECARIA

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el United States Department of Housing and Urban Development (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800877-8339.. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

**Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar : http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.**

Acreedor hipotecario: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Dirección  del Acreedor hipotecario: 9062 Old Annapolis Road MAC: N2702-011, Columbia, MD 21045

Representante autorizado del Acreedor hipotecario: GURUPRASAD B C

Fecha de envio por correo: 05/08/2020

Información de contacto del representante autorizado del Acreedor hipotecario:

███████████████████████████

---

www.MortgageQuestions.com                                                                    XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

INTERNET REPRINT

3-814-8F/061-000014-001-02-000-000-000-000

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ▇▇▇▇▇▇▇▇▇▇▇▇▇▇

**FORM 34-27-3.2**

| **NOTICE OF MEDIATION CONFERENCE PURSUANT TO** |
| :---: |
| **R.I. GEN. LAWS § 34-27-3.2** |

### THIS IS NOT AN EVICTION NOTICE

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.2 of The Rhode Island Mortgage Foreclosure and Sale Act.

**TO ASSIST YOU IN AVOIDING FORECLOSURE, YOU HAVE THE RIGHT TO A FREE, IN-PERSON OR TELEPHONE MEDIATION CONFERENCE WITH AN INDEPENDENT MEDIATION COORDINATOR. THE MORTGAGEE MAY NOT FORECLOSE UNLESS IT PROVIDES YOU THE OPPORTUNITY TO PARTICIPATE IN THE MEDIATION CONFERENCE, WHICH MUST BE SCHEDULED WITHIN SIXTY (60) DAYS OF THE RECEIPT OF A COMPLETED NOTICE OF MEDIATION, SINGLE POINT OF CONTACT INFORMATION FOR THE MORTGAGEE, AND PAYMENT INITIATING THE MEDIATION PROCESS HAS BEEN RECEIVED BY THE MEDIATION COORDINATOR. YOU WILL BE CONTACTED BY A FORECLOSURE MEDIATION COORDINATOR TO SCHEDULE THAT MEDIATION CONFERENCE.**

Name of Mortgagor: ROBERT O CLARK ROBERT W CLARK

▇▇▇▇▇▇▇▇▇▇

▇▇▇▇▇▇▇▇▇▇▇▇

Address of Residential Real Estate: 254 WARREN AVE E PROVIDENCE RI 02914

Date of Default: 02/01/2020

Date of release of loan from automatic stay in bankruptcy proceeding if applicable: N/A

Date of release of loan from protections of the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq., or R.I. Gen. Laws §34-27-4(d), if applicable: N/A

The mortgagee named below ("Mortgagee") hereby notifies you that you are in Default on your mortgage. If you fail to remedy this Default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

Mortgagee: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Mortgagee Address:

Street Address: 9062 Old Annapolis Road MAC: N2702-011

City, State, Zip Code: Columbia, MD 21045

Mortgagee Authorized Representative: GURUPRASAD B C

Date Mailed: 05/08/2020

Contact Information for Mortgagee Authorized Representative:

▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

www.MortgageQuestions.com                                                                      XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ███████

## FORMULARIO 34-27-3.2



| NOTIFICACIÓN DE REUNIÓN DE MEDIACIÓN SEGÚN |
|---|
| **EL § 34-27-3.2 DE LAS LEYES GENERALES DE RHODE ISLAND (R. I.)** |
| **ESTO NO ES UN AVISO DE DESALOJO** |

Esta notificación se le proporciona para informarle sobre la protección que proveen las Leyes Generales de R. I. en el § 34-27-3.2 de la Mortgage Foreclosure and Sale Act (Ley de Ejecuciones Hipotecarias y Ventas) del estado de Rhode Island.

**PARA AYUDARLO A EVITAR LA EJECUCIÓN HIPOTECARIA, USTED TIENE DERECHO A UNA REUNIÓN DE MEDIACIÓN GRATUITA CON UN COORDINADOR DE MEDIACIÓN INDEPENDIENTE. DICHA REUNIÓN SE PODRÁ EFECTUAR PERSONALMENTE O POR TELÉFONO. EL ACREEDOR HIPOTECARIO NO PODRÁ EJECUTAR LA HIPOTECA SIN HABERLE PROPORCIONADO LA OPORTUNIDAD DE PARTICIPAR EN LA REUNIÓN DE MEDIACIÓN, LA CUAL DEBE ESTAR PROGRAMADA DENTRO DE LOS SESENTA (60) DÍAS DE RECIBIR EL AVISO DE CONFERENCIA DE MEDIACIÓN COMPLETO, PUNTO DE CONTACTO ÚNICO DEL ACREEDOR HIPOTECARIO, Y EL PAGO PARA EL INICIO DEL PROCESO DE MEDIACIÓN. USTED SERÁ CONTACTADO POR UN COORDINADOR DE MEDIACIÓN DE EJECUCIONES HIPOTECARIAS PARA PROGRAMMAR LA CONFERENCIA DE MEDIACIÓN.**

Nombre del cliente: ROBERT O CLARK ROBERT W CLARK

███████

Escriba la Dirección de la Propiedad Resindencial: 254 WARREN AVE E PROVIDENCE RI 02914

Fecha de Defecto: 02/01/2020

Fecha de liberación de préstamo de la suspensión, automática en un procedimiento de quiebra, si es aplicable: N/A

Fecha de liberación de la hipoteca de la protección de la ley general Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq., or R.I. Gen. Laws §34-27-4(d), si corresponde: N/A

Por la presente, el acreedor hipotecario nombrado a continuación ("Acreedor hipotecario") lo notifica que usted está en mora en los pagos de su hipoteca. Si no soluciona esta mora, el Acreedor hipotecario tiene derecho a ejecutar la hipoteca de la propiedad que garantiza el préstamo hipotecario citado en la referencia de esta notificación

Acreedor hipotecario: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Dirección del Acreedor hipotecario:

Calle: 9062 Old Annapolis Road MAC: N2702-011

Ciudad, estado y código postal: Columbia, MD 21045

Representante autorizado del Acreedor hipotecario: GURUPRASAD B C

Fecha de envío postal: 05/08/2020

Información de contacto del representante autorizado del Acreedor hipotecario:

███████████

████████████

███████

<div style="writing-mode: vertical">3-814-BIF061-000014-001-03-000-000-000-000</div>

---

www.MortgageQuestions.com                                                                                   XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ▮▮▮▮▮▮▮▮▮▮

**FORMULÁRIO 34-27-3.2**

| **NOTIFICAÇÃO DE CONFERÊNCIA DE MEDIAÇÃO CONFORME LEIS R.I. GEN. § 34-27-3.2** |
|---|

### ISTO NÃO É UM AVISO DE DESPEJO

Esta Notificação destina-se a informar-lhe as proteções fornecidas pelas leis R.I. Gen. § 34-27-3.2 de Execução Hipotecária e a Lei de Venda de Valores Imobiliários de Rhode Island.

**PARA AJUDAR-ILE A EVITAR O EMBARGO (FORECLOSURE) DA SUA CASA, INFORMAMOS-IHE QUE TEM O DIREITO A UMA CONFERÊNCIA DE MEDIAÇÃO, GRATUITA SEJA VIA TELEFÓNICA SEJA PESSOALMENTE COM UM COORDENADOR INDEPENDENTE DE MEDIAÇÃO. O CREDOR HIPOTECARIO NÃO PODE EMBARGAR ATÉ DAR-LHE A OPORTUNIDADE DE PARTICIPAR NESTA CONFERENCIA A QUAL SERÁ MARCADA NO PERIODO DE SESSENTA (60) DIAS DESDE OU AO RECEBERMOS O AVISO DE CONFERÊNCIA DE MEDIAÇÃO PREENCHIDO E ASSINALANDO O PEDIDO DE INFORMAÇÃO DE UM CONTACTO PARA O CREDOR, OU O PAGO INICIAL REQUERIDO SEJA RECEBIDO PELO MEDIODOR UM COORDENADOR IRÁ CONTACTAR-LHE PARA MARCAR A DATA DESTA MEDIAÇÃO.**

Nome do cliente: ROBERT O CLARK ROBERT W CLARK

▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮

Endereço de Imóveis Residenciais: 254 WARREN AVE E PROVIDENCE RI 02914

Data de delinquência: 02/01/2020

Data em que o empréstimo foi liberado da suspensão automática de falência, se aplicável: N/A

Data da exoneração da hipoteca da proteção conferida pela lei dos Estados Unidos da America e do Estado de Rhode Island (Servicemembers Civil Relief Act, 50 U.S.C. App §501 et seq. or R.I. Gen. Laws §34-27-4(d)), se aplicavel: N/A

O Crédito Imobiliário denominada abaixo ("Créditos Imobiliários") por este instrumento notifica -se que está inadimplente em sua hipoteca. Se você falhar em corrigir tal inadimplência, Créditos Imobiliários têm o direito de executar o empréstimo de hipoteca consistente dos bens imóveis relacionados nesta notificação.

Créditos Imobiliários: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Endereço de Créditos Imobiliários:

Rua: 9062 Old Annapolis Road MAC: N2702-011

Cidade, Estado, CEP: Columbia, MD 21045

Representante Autorizado de Créditos Imobiliários: GURUPRASAD B C

Data de envio: 05/08/2020

Informações de Contato para Representante Autorizado de Créditos mobiliários:

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

www.MortgageQuestions.com                                                                                                    XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 6
INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ▬▬▬▬▬▬▬▬

| **Important Information** |
| --- |



**HUD Counseling**

For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**HUD Consejeria**

Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoria de vivienda en todo el pais que le puede proporcionar asesoramiento sobre las alternativas de ejecución hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprension de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Linea Directa de HOPE al 1-888-995-HOPE. También puede visitar el sitio web de HUD en http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

**Attention Servicemembers and Dependents**

Servicemember on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA). If you are entitled to or have questions as to whether you are entitled to legal protections under the SCRA, please go to www.militaryonesource.mil/legal or call 1-800-342-9647 to find out more information. You can also contact us at 1-888-820-6474 if you have any questions about your rights under SCRA.

**Requests for Information and Notices of Error, including Qualified Written Requests**

If you wish to request information or assert an error relating to the servicing of your mortgage loan, including any Qualified Written Requests, you must use the address below and include your name, your mortgage loan account number, property address and a statement of either the information you are requesting or the error you believe has occurred.

> PHH Mortgage Services
> Post Office Box 66002
> Lawrenceville, NJ 08648

www.MortgageQuestions.com                                                                                     XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

3-814-BFD61-000014-001-04-000-000-000-000

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ███████████

May 8, 2020                                                          ███████████

7-814-BFD61-0000013-001-01-000-000-000-000

ROBERT O CLARK
ROBERT W CLARK
254 WARREN AVE
EAST PROVIDENCE RI 02914-4726

**Property Address:**
254 WARREN AVE
E PROVIDENCE RI 02914

**If you are experiencing a hardship as a result of COVID-19, please contact us immediately at 1-800-936-8705 or covid19assistance@mortgagefamily.com or via https://www.mortgagequestions.com/coronavirus so we can review your available options.**

---

www.MortgageQuestions.com                                          XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 1
INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT


# NewRez

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ███████████████████

**FORM 34-27-3.1**

| |
|---|
| **NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE AND**<br>**NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES** |

This Notice is provided to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.1 of The Rhode Island Mortgage Foreclosure and Sale Act.

## NOTICE OF DEFAULT AND MORTGAGEE'S RIGHT TO FORECLOSE

████████████████

The mortgagee named below ("Mortgagee") hereby notifies you that you are in default on your mortgage. If you fail to remedy this default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

## NOTICE OF AVAILABILITY OF MORTGAGE COUNSELING SERVICES

**Housing counseling services are available to you at no cost.** Counseling services that can help you understand your options and provide resources and referrals that may assist you in preventing foreclosure are available from mortgage counseling agencies approved by the United States Department of Housing and Urban Development (HUD). You can locate a HUD-approved mortgage counseling agency by calling HUD's toll-free telephone number, 1-800-569-4287, or by accessing HUD's Internet homepage at www.hud.gov. The TDD number is 1800-877-8339. Foreclosure prevention counseling services are available free of charge through HUD's Housing Counseling Program.

**HUD Approved Housing Counseling Agencies in Rhode Island may be found at this link http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=sea rch&searchstate=RI. If you do not have internet access, call the toll- free number above and request a printed list.**

Mortgagee: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Mortgagee Address: 9062 Old Annapolis Road MAC: N2702-011, Columbia, MD 21045

Mortgagee Authorized Representative: GURUPRASAD B C

Date Mailed: 05/08/2020

███████████████████████

███████████████████████████

████████████████████

www.MortgageQuestions.com                                                                 XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 2
INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ████████████

 **FORM 34-27-3.1**

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECAR10 A EJECUTAR LA HIPOTECA Y NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN HIPOTECARIA

Se le proporciona esta notificación para informarle acerca del amparo que ofrecen las Leyes Generales de Rhode Island § 34-27-3.1 de The Rhode Island Mortgage Foreclosure and Sale Act (Ley sobre Ejecución de Hipotecas y Remates de Rhode Island).

### AVISO DE MORA Y DERECHO DEL ACREEDOR HIPOTECARIO A EJECUTAR LA HIPOTECA

████████████

Por medio del presente el acreedor hipotecario indicado abajo ("Acreedor hipotecario") le notifica que su hipoteca esta morosa. Si no puede solventar la situación, el Acreedor hipotecario tiene el derecho de ejecutar la hipoteca del inmueble que avala el préstamo hipotecario al cual se alude en el presente aviso.

### NOTIFICACIÓN DE DISPONIBILIDAD DE SERVICIOS DE ORIENTACIÓN IPOTECARIA

**Se encuentran a disposición servicios de orientación sobre vivienda sin costo adicional.** Los servicios de orientación pueden ayudarle a comprender las opciones de las que dispone, así como también ofrecerle recursos y referencias que podrían contribuir a evitar la ejecución de la hipoteca. Dichos servicios los ofrecen agencias de orientación hipotecaria aprobadas por el United States Department of Housing and Urban Development (Departamento de Vivienda y Desarrollo Urbano de EE.UU., HUD, por sus siglas en inglés). Puede localizar agencias de orientación hipotecaria aprobadas por HUD llamando al número gratuito de dicho departamento al 1-800-569-4287, o ingresando a la página en Internet de HUD www.hud.gov El número del dispositivo de comunicación para sordos (TDD, por sus siglas en inglés) es 1-800877-8339.. Los servicios de orientación para prevenir la ejecución de hipotecas se ofrecen sin costo alguno mediante el Programa de Orientación para la Vivienda de HUD.

**Agencias de asesoría aprobadas por el Departamento de Vivienda y Desarrollo Urbano en Rhode Island pueden ser encontradas en este lugar : http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm?&webListAction=search&searchstate=RI. Si usted no tiene acceso a internet, llame a la línea de teléfono gratuita que aparece arriba para solicitar una lista impresa.**

Acreedor hipotecario: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Dirección  del Acreedor hipotecario: 9062 Old Annapolis Road MAC: N2702-011, Columbia, MD 21045

Representante autorizado del Acreedor hipotecario: GURUPRASAD B C

Fecha de envio por correo: 05/08/2020

████████████████████████

7-814-BFD61-0000013-001-02-000-000-000-000

---

www.MortgageQuestions.com                                                                                              XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ▮▮▮▮▮▮▮▮▮▮▮▮

**FORM 34-27-3.2**

| NOTICE OF MEDIATION CONFERENCE PURSUANT TO |
| R.I. GEN. LAWS § 34-27-3.2 |

### THIS IS NOT AN EVICTION NOTICE

This Notice is provided to you to inform you of the protections provided by R.I. Gen. Laws § 34-27-3.2 of The Rhode Island Mortgage Foreclosure and Sale Act.

**TO ASSIST YOU IN AVOIDING FORECLOSURE, YOU HAVE THE RIGHT TO A FREE, IN-PERSON OR TELEPHONE MEDIATION CONFERENCE WITH AN INDEPENDENT MEDIATION COORDINATOR. THE MORTGAGEE MAY NOT FORECLOSE UNLESS IT PROVIDES YOU THE OPPORTUNITY TO PARTICIPATE IN THE MEDIATION CONFERENCE, WHICH MUST BE SCHEDULED WITHIN SIXTY (60) DAYS OF THE RECEIPT OF A COMPLETED NOTICE OF MEDIATION, SINGLE POINT OF CONTACT INFORMATION FOR THE MORTGAGEE, AND PAYMENT INITIATING THE MEDIATION PROCESS HAS BEEN RECEIVED BY THE MEDIATION COORDINATOR. YOU WILL BE CONTACTED BY A FORECLOSURE MEDIATION COORDINATOR TO SCHEDULE THAT MEDIATION CONFERENCE.**

Name of Mortgagor: ROBERT O CLARK ROBERT W CLARK

▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮

Address of Residential Real Estate: 254 WARREN AVE E PROVIDENCE RI 02914

Date of Default: 02/01/2020

Date of release of loan from automatic stay in bankruptcy proceeding if applicable: N/A

Date of release of loan from protections of the Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq., or R.I. Gen. Laws §34-27-4(d), if applicable: N/A

The mortgagee named below ("Mortgagee") hereby notifies you that you are in Default on your mortgage. If you fail to remedy this Default, Mortgagee has the right to foreclose on the real estate securing the mortgage loan referenced in this Notice.

Mortgagee: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Mortgagee Address:

Street Address: 9062 Old Annapolis Road MAC: N2702-011

City, State, Zip Code: Columbia, MD 21045

Mortgagee Authorized Representative: GURUPRASAD B C

Date Mailed: 05/08/2020

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

www.MortgageQuestions.com                                                                 XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 4
INTERNET REPRINT

REPRESENTATION OF PRINTED DOCUMENT



C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ███████████

## FORMULARIO 34-27-3.2



> **NOTIFICACIÓN DE REUNIÓN DE MEDIACIÓN SEGÚN**
> **EL § 34-27-3.2 DE LAS LEYES GENERALES DE RHODE ISLAND (R. I.)**

### ESTO NO ES UN AVISO DE DESALOJO

Esta notificación se le proporciona para informarle sobre la protección que proveen las Leyes Generales de R. I. en el § 34-27-3.2 de la Mortgage Foreclosure and Sale Act (Ley de Ejecuciones Hipotecarias y Ventas) del estado de Rhode Island.

**PARA AYUDARLO A EVITAR LA EJECUCIÓN HIPOTECARIA, USTED TIENE DERECHO A UNA REUNIÓN DE MEDIACIÓN GRATUITA CON UN COORDINADOR DE MEDIACIÓN INDEPENDIENTE. DICHA REUNIÓN SE PODRÁ EFECTUAR PERSONALMENTE O POR TELÉFONO. EL ACREEDOR HIPOTECARIO NO PODRÁ EJECUTAR LA HIPOTECA SIN HABERLE PROPORCIONADO LA OPORTUNIDAD DE PARTICIPAR EN LA REUNIÓN DE MEDIACIÓN, LA CUAL DEBE ESTAR PROGRAMADA DENTRO DE LOS SESENTA (60) DÍAS DE RECIBIR EL AVISO DE CONFERENCIA DE MEDIACIÓN COMPLETO, PUNTO DE CONTACTO ÚNICO DEL ACREEDOR HIPOTECARIO, Y EL PAGO PARA EL INICIO DEL PROCESO DE MEDIACIÓN. USTED SERÁ CONTACTADO POR UN COORDINADOR DE MEDIACIÓN DE EJECUCIONES HIPOTECARIAS PARA PROGRAMMAR LA CONFERENCIA DE MEDIACIÓN.**

Nombre del cliente: ROBERT O CLARK ROBERT W CLARK

████████████

Escriba la Dirección de la Propiedad Resindencial: 254 WARREN AVE E PROVIDENCE RI 02914

Fecha de Defecto: 02/01/2020

Fecha de liberación de préstamo de la suspensión, automática en un procedimiento de quiebra, si es aplicable: N/A

Fecha de liberación de la hipoteca de la protección de la ley general Servicemembers Civil Relief Act, 50 U.S.C. App. §501 et seq., or R.I. Gen. Laws §34-27-4(d), si corresponde: N/A

Por la presente, el acreedor hipotecario nombrado a continuación ("Acreedor hipotecario") lo notifica que usted está en mora en los pagos de su hipoteca. Si no soluciona esta mora, el Acreedor hipotecario tiene derecho a ejecutar la hipoteca de la propiedad que garantiza el préstamo hipotecario citado en la referencia de esta notificación

Acreedor hipotecario: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Dirección del Acreedor hipotecario:

Calle: 9062 Old Annapolis Road MAC: N2702-011

Ciudad, estado y código postal: Columbia, MD 21045

Representante autorizado del Acreedor hipotecario: GURUPRASAD B C

Fecha de envío postal: 05/08/2020



---

www.MortgageQuestions.com                                                        XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | █████████████

**FORMULÁRIO 34-27-3.2**

| |
|---|
| **NOTIFICAÇÃO DE CONFERÊNCIA DE MEDIAÇÃO CONFORME LEIS**<br>**R.I. GEN. § 34-27-3.2** |

### ISTO NÃO É UM AVISO DE DESPEJO

Esta Notificação destina-se a informar-lhe as proteções fornecidas pelas leis R.I. Gen. § 34-27-3.2 de Execução Hipotecária e a Lei de Venda de Valores Imobiliários de Rhode Island.

**PARA AJUDAR-ILE A EVITAR O EMBARGO (FORECLOSURE) DA SUA CASA, INFORMAMOS-IHE QUE TEM O DIREITO A UMA CONFERÊNCIA DE MEDIAÇÃO, GRATUITA SEJA VIA TELEFÓNICA SEJA PESSOALMENTE COM UM COORDENADOR INDEPENDENTE DE MEDIAÇÃO. O CREDOR HIPOTECARIO NÃO PODE EMBARGAR ATÉ DAR-LHE A OPORTUNIDADE DE PARTICIPAR NESTA CONFERENCIA A QUAL SERÁ MARCADA NO PERIODO DE SESSENTA (60) DIAS DESDE OU AO RECEBERMOS O AVISO DE CONFERÊNCIA DE MEDIAÇÃO PREENCHIDO E ASSINALANDO O PEDIDO DE INFORMAÇÃO DE UM CONTACTO PARA O CREDOR, OU O PAGO INICIAL REQUERIDO SEJA RECEBIDO PELO MEDIODOR UM COORDENADOR IRÁ CONTACTAR-LHE PARA MARCAR A DATA DESTA MEDIAÇÃO.**

Nome do cliente: ROBERT O CLARK ROBERT W CLARK

████████████████

████████

Endereço de Imóveis Residenciais: 254 WARREN AVE E PROVIDENCE RI 02914

Data de delinquência: 02/01/2020

Data em que o empréstimo foi liberado da suspensão automática de falência, se aplicável: N/A

Data da exoneração da hipoteca da proteção conferida pela lei dos Estados Unidos da America e do Estado de Rhode Island (Servicemembers Civil Relief Act, 50 U.S.C. App §501 et seq. or R.I. Gen. Laws §34-27-4(d)), se aplicavel: N/A

O Crédito Imobiliário denominada abaixo ("Créditos Imobiliários") por este instrumento notifica-se que está inadimplente em sua hipoteca. Se você falhar em corrigir tal inadimplência, Créditos Imobiliários têm o direito de executar o empréstimo de hipoteca consistente dos bens imóveis relacionados nesta notificação.

Créditos Imobiliários: Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1

Endereço de Créditos Imobiliários:

Rua: 9062 Old Annapolis Road MAC: N2702-011

Cidade, Estado, CEP: Columbia, MD 21045

Representante Autorizado de Créditos Imobiliários: GURUPRASAD B C

Data de envio: 05/08/2020

Informações de Contato para Representante Autorizado de Créditos mobiliários:

████████████████████████████████

www.MortgageQuestions.com                                                                                      XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

REPRESENTATION OF PRINTED DOCUMENT

 **NewRez**

C/O PHH Mortgage Services | 1 Mortgage Way | Mt. Laurel, NJ 08054 | ▇▇▇▇▇▇▇▇▇▇

| **Important Information** |
| --- |



### HUD Counseling

For additional assistance, the United States Department of Housing and Urban Development ("HUD"), which is a government agency, sponsors housing counseling agencies throughout the country that can provide you advice on foreclosure alternatives, budgetary issues, and even assistance with understanding this notice. There is no fee for this service. If you would like assistance, you can contact a HUD-approved housing counselor by calling 1-800-569-4287 or you can reach the HOPE Hotline number at 1-888-995-HOPE. You may also visit the HUD website at http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

### HUD Consejeria

Para obtener ayuda adicional, el Departamento de Vivienda y Desarrollo Urbano ("HUD") de Estados Unidos, que es una agencia del gobierno, patrocina agencias de asesoria de vivienda en todo el pais que le puede proporcionar asesoramiento sobre las alternativas de ejecución hipotecaria, las cuestiones presupuestarias, e incluso la asistencia con la comprension de este aviso. No hay que pagar por este servicio. Si desea ayuda, puede ponerse en contacto con un asesor de vivienda aprobado por HUD llamando al 1-800-569-4287 o puede llegar a la Linea Directa de HOPE al 1-888-995-HOPE. También puede visitar el sitio web de HUD en http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm.

### Attention Servicemembers and Dependents

Servicemember on "active duty" or "active service", or a spouse or dependent of such a servicemember may be entitled to certain legal protections and debt relief pursuant to the Servicemembers Civil Relief Act (50 USC §§ 3901-4043) (SCRA). If you are entitled to or have questions as to whether you are entitled to legal protections under the SCRA, please go to www.militaryonesource.mil/legal or call 1-800-342-9647 to find out more information. You can also contact us at 1-888-820-6474 if you have any questions about your rights under SCRA.

### Requests for Information and Notices of Error, including Qualified Written Requests

If you wish to request information or assert an error relating to the servicing of your mortgage loan, including any Qualified Written Requests, you must use the address below and include your name, your mortgage loan account number, property address and a statement of either the information you are requesting or the error you believe has occurred.

> PHH Mortgage Services
> Post Office Box 66002
> Lawrenceville, NJ 08648

www.MortgageQuestions.com                                                                                       XC145

*This communication is from a debt collector attempting to collect a debt; any information obtained will be used for that purpose. However, if the debt is in active bankruptcy or has been discharged through bankruptcy, this communication is provided purely for informational purposes only with regard to our secured lien on the above referenced property. It is not intended as an attempt to collect a debt from you personally. As may be required by state law, you are hereby notified that a negative credit report reflecting on an accountholder's credit record may be submitted to a credit reporting agency if credit obligation terms are not fulfilled.*

Page 7
INTERNET REPRINT

7-814-BFD61-0000013-001-04-000-000-000-000

# Exhibit G

P.O. Box 5041
Troy, MI 48007-5041

Robert O. Clark
254 Warren Avenue
East Providence, RI 02914

File:   21-002596

# ORLANS PC

A law firm licensed in

DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA  02454
P (781) 790-7800   F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION WITH OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 30, 2021

VIA FIRST CLASS MAIL
Robert O. Clark
254 Warren Avenue
East Providence, RI 02914

RE: Our File Number: 21-002596
     Property Address: 254 Warren Avenue, East Providence, RI 02914

Dear Robert O. Clark:

This law firm has been retained by PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC regarding the mortgage which encumbers the above real property (the "Mortgage"). The Note evidencing the loan in the original principal amount of $175,000.00 and the Mortgage are collectively called the "Mortgage Loan."

An attorney has reviewed information provided by our client and has been involved in the preparation of this letter.

According to the records of our client, your Mortgage Loan is in default.  **As a result, the Mortgage Loan has been accelerated and PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC has referred the matter to our office for further action.  Please see the following page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure.  To request reinstatement information, contact our Loan Resolution Department at (781) 790-7800.

**Any right you may have to reinstate your Mortgage Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the following page of this notice.**

Very truly yours,
Orlans PC

21-002596/-/189/FDCAL

## NOTICE OF DEBT PURSUANT TO
## 15 USC §1692

1. The amount of debt as of July 30, 2021 is $205,239.10.

2. Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above.  Please contact PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC or Orlans PC at (781) 790-7800 to obtain an updated payoff amount.

3. The name of the creditor to whom the debt is owed is Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1.

4. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Orlans PC.

5. If you notify Orlans PC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Orlans PC will obtain verification of debt or a copy of a judgment against the consumer and a copy of such verification or judgment, and any other information required by applicable law, will be mailed to you by Orlans PC; and

6. Upon your written request within the thirty day period, Orlans PC will provide you with the name and address of the original creditor, if different from the current creditor.

21-002596/-/189/FDCAL

# ORLANS PC

A law firm licensed in
DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA 02454
P (781) 790-7800  F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION WITH OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 30, 2021

VIA FIRST CLASS MAIL
Robert O. Clark
254 Warren Avenue
East Providence, RI 02914

RE: 254 Warren Avenue, East Providence, RI 02914
    Orlans File No. 21-002596
    Rights under Servicemembers Civil Relief Act

Dear Robert O. Clark:

This letter is to inform you that if you are on active duty in the military or are a dependent of someone who is on active duty in military, you may be eligible for certain protections under the federal **Service Members Civil Relief Act (50 USC App. §§501-596) (SCRA).** Those who may be entitled to such Legal Protection under the SCRA are:

Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard; active service members of the commissioned corps of the National Oceanic and Atmospheric Administration; active service members of the commissioned corps of the Public Health Service; United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; and their spouses and/or dependents.

If you feel you may be eligible for such protections, you should contact both the servicer and Orlans PC immediately and forward a copy of the service member's military orders to:

| | | |
|---|---|---|
| Orlans PC | | PHH Mortgage Corporation successor by merger |
| PO Box 540540 | | to Ocwen Loan Servicing, LLC1661 Worthington |
| Waltham, MA 02454 | and | Road, Suite 100 |
| Attn: SCRA | | West Palm Beach, FL 33409 |
| Phone (781) 790-7800 | | ATTN: Loss Mitigation |

Sincerely,

21-002596/-/189/FDCAL

**ORLANS PC**

P.O. Box 5041
Troy, MI 48007-5041

Robert W. Clark
254 Warren Avenue
East Providence, RI 02914

File:   21-002596

# ORLANS PC

A law firm licensed in
DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA  02454
P (781) 790-7800  F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION WITH OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 30, 2021

VIA FIRST CLASS MAIL
Robert W. Clark
254 Warren Avenue
East Providence, RI 02914

RE: Our File Number: 21-002596
     Property Address: 254 Warren Avenue, East Providence, RI 02914

Dear Robert W. Clark:

This law firm has been retained by PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC regarding the mortgage which encumbers the above real property (the "Mortgage"). The Note evidencing the loan in the original principal amount of $175,000.00 and the Mortgage are collectively called the "Mortgage Loan."

An attorney has reviewed information provided by our client and has been involved in the preparation of this letter.

According to the records of our client, your Mortgage Loan is in default. **As a result, the Mortgage Loan has been accelerated and PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC has referred the matter to our office for further action. Please see the following page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (781) 790-7800.

**Any right you may have to reinstate your Mortgage Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the following page of this notice.**

Very truly yours,
Orlans PC

21-002596/-/189/FDCAL

## NOTICE OF DEBT PURSUANT TO
## 15 USC §1692

1. The amount of debt as of July 30, 2021 is $205,239.10.

2. Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above.  Please contact PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC or Orlans PC at (781) 790-7800 to obtain an updated payoff amount.

3. The name of the creditor to whom the debt is owed is Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1.

4. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Orlans PC.

5. If you notify Orlans PC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Orlans PC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment, and any other information required by applicable law, will be mailed to you by Orlans PC; and

6. Upon your written request within the thirty day period, Orlans PC will provide you with the name and address of the original creditor, if different from the current creditor.

21-002596/-/189/FDCAL

# ORLANS PC

A law firm licensed in

DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA 02454
P (781) 790-7800  F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION WITH OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 30, 2021

VIA FIRST CLASS MAIL
Robert W. Clark
254 Warren Avenue
East Providence, RI 02914

RE: 254 Warren Avenue, East Providence, RI 02914
    Orlans File No. 21-002596
    Rights under Servicemembers Civil Relief Act

Dear Robert W. Clark:

This letter is to inform you that if you are on active duty in the military or are a dependent of someone who is on active duty in military, you may be eligible for certain protections under the federal **Service Members Civil Relief Act (50 USC App. §§501-596) (SCRA).** Those who may be entitled to such Legal Protection under the SCRA are:

Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard; active service members of the commissioned corps of the National Oceanic and Atmospheric Administration; active service members of the commissioned corps of the Public Health Service; United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; <u>and their spouses and/or dependents.</u>

<u>If you feel you may be eligible for such protections, you should contact both the servicer and Orlans PC immediately</u> and forward a copy of the service member's military orders to:

Orlans PC
PO Box 540540
Waltham, MA 02454
Attn: SCRA
Phone (781) 790-8700

and

PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC 1661 Worthington Road, Suite 100
West Palm Beach, FL 33409
ATTN: Loss Mitigation

**Sincerely,**

21-002596/-/189/FDCAL

**ORLANS PC**

21-002596/-/189/FDCAL

P.O. Box 5041
Troy, MI 48007-5041

Robert W. Clark
C/O George E. Babock, Esquire, 574 Central Avenue
Pawtucket, RI 02861

File:   21-002596

# ORLANS PC

A law firm licensed in
DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA 02454
P (781) 790-7800  F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION WITH OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 30, 2021

VIA FIRST CLASS MAIL
Robert W. Clark
C/O George E. Babock, Esquire, 574 Central Avenue
Pawtucket, RI 02861

RE: Our File Number: 21-002596
    Property Address: 254 Warren Avenue, East Providence, RI 02914

Dear Robert W. Clark:

This law firm has been retained by PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC regarding the mortgage which encumbers the above real property (the "Mortgage"). The Note evidencing the loan in the original principal amount of $175,000.00 and the Mortgage are collectively called the "Mortgage Loan."

An attorney has reviewed information provided by our client and has been involved in the preparation of this letter.

According to the records of our client, your Mortgage Loan is in default. **As a result, the Mortgage Loan has been accelerated and PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC has referred the matter to our office for further action. Please see the following page for a statement of the amount owed and important additional information.**

You may have the right to reinstate the Mortgage Loan by paying all past due installments, late charges, delinquent taxes, insurance premiums, and costs and fees incurred in the foreclosure. To request reinstatement information, contact our Loan Resolution Department at (781) 790-7800.

**Any right you may have to reinstate your Mortgage Loan and the procedures for reinstatement outlined above do not alter or amend your validation rights as described on the following page of this notice.**

                        Very truly yours,
                        Orlans PC

21-002596/-/189/FDCAL

## NOTICE OF DEBT PURSUANT TO
### 15 USC §1692

1. The amount of debt as of July 30, 2021 is $205,239.10.

2. Because of interest, fees and costs, and other charges that may vary from day to day, the amount you owe at a later date may be greater than the amount stated above.  Please contact PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC or Orlans PC at (781) 790-7800 to obtain an updated payoff amount.

3. The name of the creditor to whom the debt is owed is Wells Fargo Bank, National Association as Trustee for Merrill Lynch Mortgage Investors Trust, Mortgage Loan Asset-Backed Certificates, Series 2004-OPT1.

4. Unless you, within thirty days after receipt of this notice, dispute the validity of the debt, or any portion thereof, the debt will be assumed to be valid by Orlans PC.

5. If you notify Orlans PC in writing within the thirty day period that the debt, or any portion thereof, is disputed, Orlans PC will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment, and any other information required by applicable law, will be mailed to you by Orlans PC; and

6. Upon your written request within the thirty day period, Orlans PC will provide you with the name and address of the original creditor, if different from the current creditor.

21-002596/-/189/FDCAL

# ORLANS PC

A law firm licensed in
DC, DE, FL, MA, MD, MI, NH, PA, RI, VA

PO Box 540540
Waltham, MA 02454
P (781) 790-7800  F (781) 790-7801
www.Orlans.com
Business Hours: 8:30 AM – 5:00 PM ET

**FEDERAL LAW REQUIRES US TO ADVISE YOU THAT COMMUNICATION WITH OUR OFFICE COULD BE INTERPRETED AS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION WILL BE USED FOR THAT PURPOSE.**

**IN THE EVENT YOU ARE SUBJECT TO AN AUTOMATIC STAY ISSUED BY A UNITED STATES BANKRUPTCY COURT OR THE REFERENCED DEBT HAS BEEN DISCHARGED IN BANKRUPTCY, THIS COMMUNICATION IS FOR INFORMATIONAL PURPOSES AND IS NOT INTENDED TO BE AN ATTEMPT TO COLLECT A DEBT.**

**IF YOU ARE NOW ON ACTIVE MILITARY DUTY OR HAVE BEEN IN THE PRIOR TWELVE MONTHS, OR IF YOU ARE A DEPENDENT OF AN ACTIVE SERVICEMEMBER, PLEASE CONTACT OUR OFFICE AS YOU MAY BE ENTITLED TO PROTECTIONS UNDER THE SERVICEMEMBERS CIVIL RELIEF ACT.**

July 30, 2021

VIA FIRST CLASS MAIL
Robert W. Clark
C/O George E. Babock, Esquire, 574 Central Avenue
Pawtucket, RI 02861

RE: 254 Warren Avenue, East Providence, RI 02914
    Orlans File No. 21-002596
    Rights under Servicemembers Civil Relief Act

Dear Robert W. Clark:

This letter is to inform you that if you are on active duty in the military or are a dependent of someone who is on active duty in military, you may be eligible for certain protections under the federal **Service Members Civil Relief Act (50 USC App. §§501-596) (SCRA).** Those who may be entitled to such Legal Protection under the SCRA are:

Active duty members of the Army, Navy, Air Force, Marine Corps, Coast Guard, and active service National Guard; active service members of the commissioned corps of the National Oceanic and Atmospheric Administration; active service members of the commissioned corps of the Public Health Service; United States citizens servicing with the armed forces of a nation with which the United States is allied in the prosecution of a war or military action; <u>and their spouses and/or dependents.</u>

<u>If you feel you may be eligible for such protections, you should contact both the servicer and Orlans PC immediately</u> and forward a copy of the service member's military orders to:

Orlans PC
PO Box 540540
Waltham, MA  02454       and
Attn: SCRA
Phone (781) 790-7800

PHH Mortgage Corporation successor by merger to Ocwen Loan Servicing, LLC1661 Worthington Road, Suite 100
West Palm Beach, FL  33409
ATTN: Loss Mitigation

**Sincerely,**

21-002596/-/189/FDCAL

ORLANS PC

# Exhibit H

Department of Defense Manpower Data Center

Results as of : May-27-2022 09:46:33 AM

SCRA 5.13



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-0660
Birth Date:
Last Name:      CLARK
First Name:     ROBERT
Middle Name:    O
Status As Of:   May-27-2022
Certificate ID: G19VH1P12BZ1GN4

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : May-27-2022 09:47:12 AM

SCRA 5.13



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX-2206 |
| Birth Date: | |
| Last Name: | CLARK |
| First Name: | ROBERT |
| Middle Name: | W |
| Status As Of: | May-27-2022 |
| Certificate ID: | 3M5P0C5S3M4SY2G |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN:            XXX-XX-0660
Birth Date:
Last Name:      CLARK
First Name:     ROBERT
Middle Name:
Status As Of:   May-27-2022
Certificate ID: NQMQS61X6LDKC0J

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | NA | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

Department of Defense Manpower Data Center

Results as of : May-27-2022 09:48:30 AM

SCRA 5.13



### Status Report
### Pursuant to Servicemembers Civil Relief Act

SSN:                 XXX-XX-2206
Birth Date:
Last Name:      CLARK
First Name:      ROBERT
Middle Name:
Status As Of:    May-27-2022
Certificate ID:   K35XBC5MW77B0TG

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.